# Exhibit 1

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**APPLICATIONS IN INTERNET TIME, LLC,**
*Plaintiff-Appellant*

**v.**

**SALESFORCE, INC.,**
*Defendant-Appellee*

---

2025-2026

---

Appeal from the United States District Court for the District of Nevada in No. 3:13-cv-00628-MMD-CLB, Judge Miranda M. Du.

---

Decided: March 16, 2026

---

MICHAEL DEVINCENZO, King & Wood Mallesons LLP, New York, NY, argued for plaintiff-appellant. Also represented by ANDREA PACELLI, CHARLES WIZENFELD; STEVEN C. SEREBOFF, SoCal IP Law Group LLP, Westlake Village, CA.

DEREK L. SHAFFER, Quinn Emanuel Urquhart & Sullivan, LLP, Washington, DC, argued for defendant-appellee. Also represented by KEVIN P.B. JOHNSON, RAY ROBERT

ZADO, Redwood Shores, CA; SAM STEPHEN STAKE, OGNJEN ZIVOJNOVIC, San Francisco, CA.

---

Before LOURIE, CHEN, and STOLL, *Circuit Judges*.

LOURIE, *Circuit Judge*.

Applications in Internet Time, LLC ("AIT") appeals from a decision of the United States District Court for the District of Nevada dismissing its suit for lack of constitutional standing, *Applications in Internet Time, LLC v. Salesforce, Inc.*, No. 3:13-cv-00628-MMD-CLB, 2025 WL 961656 (D. Nev. Mar. 28, 2025) ("*Dismissal Decision*"), and denying its motion for equitable relief, *Applications in Internet Time, LLC v. Salesforce, Inc.*, No. 3:13-cv-00628-MMD-CLB, 2025 WL 2029841 (D. Nev. July 21, 2025) ("*Reconsideration Decision*"). For the following reasons, we *affirm*.

BACKGROUND

The main issue in this case is whether the district court erred in determining that AIT lacked constitutional standing to sue for infringement of U.S. Patents 7,356,482 ("the '482 patent") and 8,484,111 ("the '111 patent"). That in turn depends on whether a non-party, Alternative Systems, Inc. ("ASI"), had title to the patent application that would later issue as those patents at the time when ASI entered into an agreement to assign its rights to those patents to AIT.

ASI was founded in 1986 by Beverly Nelson, Douglas Sturgeon, and Anthony Sziklai. J.A. 4569. In 1997, ASI entered into a joint venture with a company (not a party in this appeal) to develop information management software technology. *Dismissal Decision*, 2025 WL 961656, at *1; J.A. 4569. The joint venture culminated in the development of new Integrated Change Management Unit ("ICMU") software, and in 1998 ASI filed a patent

application seeking to protect that software. *See* J.A. 4570–71. Pursuant to the joint venture agreement, ASI owned all rights to the patents that might issue from the application via assignments executed by the named inventors. J.A. 500, 4556–61. That application matured into the '482 and '111 patents in 2008 and 2013, respectively. J.A. 16, 50.

The joint venture was terminated in 2002 pursuant to agreement ("the 2002 Agreement"). J.A. 3596–611. That Agreement contemplated a future contingent conveyance of patent rights to HMB, a party to be created by the Agreement, J.A. 3596, 3598, but that future contingent conveyance never actually occurred, J.A. 3231, 4571.

In 2006, ASI, Nelson, and other entities that were party to the joint venture entered into an agreement that "sold" the 2002 Agreement to Nelson ("the 2006 Agreement"). In relevant part, the 2006 Agreement recited "[t]hat the . . . 2002 Agreement is hereby sold to Nelson." J.A. 3591. It also stated that "all right, title, interest, and liability (including financial liability) set forth in the . . . 2002 Agreement shall transfer in whole to Nelson." *Id.*

Meanwhile, in 2005, Nelson and Sturgeon formed AIT, the plaintiff in this case. J.A. 4571. In 2012, Sturgeon, acting on behalf of ASI, entered into an agreement to assign the patent rights to AIT ("the 2012 Assignment"). *See* J.A. 4562–66. The following year, in 2013, both patents having issued, AIT sued Salesforce, Inc. ("Salesforce") in the District of Nevada, asserting infringement of the '482 and '111 patents. *See* J.A. 89.

The litigation proceeded through discovery and motion practice, most of which is of no consequence to this appeal. But, in 2022, Salesforce filed a motion to dismiss for lack of standing and a motion for summary judgment that the patent claims were invalid as anticipated and obvious, and that its accused products were not infringing. *Applications in Internet Time, LLC v. Salesforce.com, Inc.*, 691 F. Supp.

3d 1223, 1227 (D. Nev. 2023). The district court granted the motion for summary judgment on each ground asserted by Salesforce and denied the motion to dismiss for lack of standing as moot. *Id.* at 1253. AIT appealed the grant of summary judgment to this court, and we vacated and remanded on the issue of anticipation. *Applications in Internet Time, LLC v. Salesforce, Inc.*, 2024 WL 4456271, at *1, *6 (Fed. Cir. Oct. 10, 2024).

On remand, Salesforce filed a renewed motion to dismiss for lack of standing, which the district court granted. *See Dismissal Decision*, 2025 WL 961656, at *1. The district court determined that the 2006 Agreement had unambiguously transferred all the patent rights to Nelson, so that, pursuant to the 2012 Assignment, ASI had no rights remaining to transfer to AIT. *Id.* at *3, *5. AIT therefore had no rights in the asserted patents at the outset of the lawsuit and lacked constitutional standing to sue under them. *Id.* The district court also rejected AIT's argument that Nelson effectively had transferred her patent rights to AIT. *Id.* at *5. AIT filed a motion for reconsideration and equitable relief, under Federal Rule of Civil Procedure 17(a)(3) ratification or the doctrine of contract reformation, which the district court denied. *Reconsideration Decision*, 2025 WL 2029841, at *2–3.

AIT timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## Standard of Review

"[Q]uestions of the district court's jurisdiction—upon which this court's jurisdiction depends—are always determined under Federal Circuit law." *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1202 (Fed. Cir. 2005). We review a district court's dismissal for lack of standing *de novo*, and we review factual determinations relevant to standing for clear error. *Advanced Video Techs. LLC v. HTC Corp.*, 879 F.3d 1314, 1317 (Fed. Cir. 2018) (citations omitted).

We review matters of procedural law that do not implicate issues of patent law under the standard of review of the regional circuit, here the Ninth Circuit. *See Landmark Screens, LLC v. Morgan, Lewis, & Bockius, LLP*, 676 F.3d 1354, 1361 (Fed. Cir. 2012); *Lans v. Digital Equip. Corp.*, 252 F.3d 1320, 1328 (Fed. Cir. 2001). The Ninth Circuit reviews denials of equitable relief, such as Rule 17(a)(3) ratification and contract reformation, for an abuse of discretion. *See Forest Grove Sch. Dist. v. T.A.*, 523 F.3d 1078, 1084 (Fed. Cir. 2008); *Jones v. L.V. Metro. Police Dep't*, 873 F.3d 1123, 1128 (9th Cir. 2017).

Regarding interpretation of a contract, "[t]he question of who owns the patent rights and on what terms typically is a question exclusively for state courts." *Bd. of Trs. of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 583 F.3d 832, 841 (Fed. Cir. 2009) (citation modified). The parties agree that California law controls interpretation of the 2006 Agreement. Open. Br at 31; Resp. Br. at 34. "Under California state law, contracts are interpreted without deference on appeal." *Tex. Instruments Inc. v. Tessera, Inc.*, 231 F.3d 1325, 1329 (Fed. Cir. 2000); *see also Intell. Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1320 (Fed. Cir. 2017) (applying California law).

## Discussion

AIT argues that the district court erred in dismissing its suit for lack of constitutional standing and abused its discretion in denying its motion for equitable relief pursuant to Rule 17(a)(3) and the doctrine of contract reformation. Open. Br. at 18, 40. We address each argument in turn.

## I

In order to have constitutional standing, a plaintiff must establish injury-in-fact, causation, and redressability. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). In patent infringement cases, the injury-in-fact

requirement is met when the plaintiff has an exclusionary right in the asserted patent(s). *Intell. Tech LLC v. Zebra Techs. Corp.*, 101 F.4th 807, 813–14 (Fed. Cir. 2024).

Under California law, "interpretation of a contract must give effect to the mutual intention of the parties." *MacKinnon v. Truck Ins. Exch.*, 73 P.3d 1205, 1212 (Cal. 2003) (citation modified). "Such intent is to be inferred, if possible, solely from the written provisions of the contract." *Id.* at 1213. "California has a liberal parol evidence rule: It permits consideration of extrinsic evidence to explain the meaning of the terms of a contract even when the meaning appears unambiguous." *Foad Consulting Grp., Inc. v. Azzalino*, 270 F.3d 821, 826 (9th Cir. 2001) (citing *City of Manhattan Beach v. Superior Ct.*, 13 Cal. 4th 232, 246 (1996)).

A

In this court, on appeal, AIT argues that the 2006 Agreement was not a present patent assignment to Nelson. It asserts that the agreement itself was sold, not the assets referred to in the agreement.

We disagree. The 2006 Agreement did convey all patent rights to Nelson. It recites:

> [T]he . . . 2002 Agreement *is hereby sold* to Nelson by the Parties (exclusive of Nelson) without reservation of any provision of the . . . 2002 Agreement. The waiver of reservation of any provision shall be irrevocable, complete and total; *all right, title, interest, and liability (including financial liability) set forth in the . . . 2002 Agreement shall transfer in whole to Nelson*. Further, Nelson shall have the sole and exclusive right to modify, terminate or otherwise discard Sections A, B and C of the . . . 2002 Agreement.

J.A. 3591 (emphases added). In turn, "Section A" of the 2002 Agreement recites:

> As soon as practicable following the date of signing of this Agreement, ASI will transfer certain assets of ASI (the "ASI Assets") to HMB . . . .
>
> . . .
>
> The ASI Assets are . . . *all* . . . *intellectual property rights* (including without limitation *patent*, trademark, copyright and other rights) . . . .

J.A. 3596 (emphases added). Because the 2006 Agreement transferred "all *right*, title, interest, and liability . . . set forth in the . . . 2002 Agreement" to Nelson, it therefore included the "intellectual property *rights*" set forth in the 2002 Agreement. Thus, as the patents were then the property of Nelson, ASI had no patent rights to transfer to AIT in 2012. AIT therefore had no exclusionary patent rights at the inception of the lawsuit and lacked constitutional standing to sue under them.

AIT's arguments to the contrary are unconvincing. AIT first argues that any transfer of patent rights to Nelson by the 2006 Agreement was a future contingent transfer which never occurred, because the "shall transfer" language of the 2006 Agreement denotes a future act. Open. Br. at 24–26. However, fatal to AIT's argument is that it reads one sentence of the 2006 Agreement in isolation, not in the context of the entire agreement. *See* Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."). Immediately preceding the "shall transfer" sentence is a sentence reciting "[t]hat the . . . 2002 Agreement *is hereby sold* to Nelson." J.A. 3591 (emphasis added). That language conveys a present transfer of the 2002 Agreement to Nelson, which includes "all right, title, interest, and liability" put forth in the next sentence. The 2006 Agreement was therefore not a future contingent transfer of patent rights to Nelson.

Relatedly, AIT argues that the 2006 Agreement affecting a present transfer of patent rights is irreconcilable with Nelson having, under the 2006 Agreement, "the sole and exclusive right to modify, terminate or otherwise discard" certain sections of the 2002 Agreement, including the "ASI Assets" and the future contingent transfer of the patent rights to HMB. *See* Open. Br. at 26–28. According to AIT, Nelson's ability to modify sections of the 2002 Agreement shows that there was no present transfer of patent rights. But AIT's argument again ignores the language "[t]hat the . . . 2002 Agreement is *hereby sold* to Nelson." J.A. 3591 (emphasis added). The 2006 Agreement specifying that Nelson has exclusive control over the assets she is gaining (that is, the sole right to modify or terminate certain terms of the 2002 Agreement) is not inconsistent with the 2006 Agreement affecting a present transfer to her of the patent rights.

Finally, AIT argues that the district court erred in declining to consider extrinsic evidence in concluding that the 2006 Agreement transferred all patent rights to Nelson. Open. Br. at 32–33. The district court indeed stated that it declined to consider extrinsic evidence, but it did acknowledge Sturgeon's testimony that the 2006 Agreement sold "[e]verything" to Nelson, and cast doubt on his later declaration attempting to walk back his testimony, because that later declaration was self-serving and contradictory. *Dismissal Decision*, 2025 WL 961656, at *4 (citing J.A. 3233–34, 4571–72).

While it appears to be true that California law requires extrinsic evidence to interpret terms that are "reasonably susceptible" to a party's interpretation, and can even be used to determine whether a term is "reasonably susceptible" to such an interpretation, extrinsic evidence cannot be used to alter or add terms to a contract. *Bionghi v. Metro. Water Dist. of S. Cal.*, 70 Cal. App. 4th 1358, 1364–65 (Cal. Ct. App. 1999); *Pac. Gas & Elec. Co. v. G. W. Thomas Drayage & Rigging Co.*, 442 P.2d 641, 645 (Cal. 1968); *see Foad*,

270 F.3d at 826 (explaining that, under California contract law, extrinsic evidence can uncover "a latent ambiguity in [a] contract").

To the extent that the district court properly evaluated extrinsic evidence to determine if there was a "latent ambiguity" in the contract terms, it correctly indicated that Sturgeon's testimony supports the conclusion that the 2006 Agreement transferred the patent rights to Nelson. Indeed, Sturgeon testified, "Everything in [the 2002] [A]greement was transferred to [Nelson]." J.A. 3233. Sturgeon was then asked, "And that includes what is defined as the ASI assets?" to which he responded, "Everything." J.A. 3234. That testimony bolsters the conclusion that the 2006 Agreement transferred the patent rights to Nelson. The district court's discrediting Sturgeon's later contradictory declaration was not clearly erroneous.

B

Next, AIT argues that, even assuming that the 2006 Agreement did transfer all rights in the asserted patents to Nelson, the district court clearly erred in determining that Nelson did not consent to the 2012 Assignment, thereby transferring her patent rights to AIT. Open. Br. at 37–39. We disagree.

In support of its argument, AIT points only to Sturgeon's declaration that he is in "constant communication" with Nelson "regarding the business of AIT and she is informed of all material decisions of the company," which "has included the assignment of the . . . patents from ASI to AIT," J.A. 4572, as well as the general fact that Nelson and Sturgeon had sole ownership and control of ASI and AIT during the relevant time, *see, e.g.*, J.A. 4569. But that is not persuasive evidence showing that Nelson consented to the 2012 Assignment. The district court thus did not clearly err in determining that Nelson did not exercise her right to modify the 2002 Agreement via her consent to the 2012 Assignment such that AIT acquired the patent rights.

AIT also argues that the district court improperly placed the burden on it to show that the 2012 Assignment was valid. Open. Br. at 38. It is true that the recording of an assignment with the Patent Office "creates a presumption of validity as to the assignment," and the burden to rebut that presumption falls "on one challenging the assignment." *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1327–29 (Fed. Cir. 2010). But Salesforce rebutted the presumption that the 2012 Assignment was valid by showing that AIT had no rights to transfer in 2012, as explained above. Notwithstanding any presumption (that was overcome in this case), the burden falls on AIT to show it had constitutional standing. *See Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 976 (Fed. Cir. 2005).

For the foregoing reasons, we conclude that the district court correctly determined that AIT lacked constitutional standing and therefore correctly granted Salesforce's motion to dismiss.

## II

We last address AIT's contention that the district court abused its discretion in denying AIT's motion, filed after the case was dismissed, for equitable relief pursuant to Rule 17(a)(3) or contract reformation under California contract law. *Reconsideration Decision*, 2025 WL 2029841, at *2.

Under FRCP 17(a)(3):

> The [district] court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action.

And under California contract law:

> When, through . . . mutual mistake of the parties, . . . a written contract does not truly express the

> intention of the parties, it may be revised on the application of a party aggrieved, so as to express that intention, so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value.

Cal. Civ. Code § 3399.

The district court denied both forms of relief, explaining that AIT's arguments based on Rule 17(a)(3) and contract reformation "could have been raised in connection with [AIT's] opposition to the motion to dismiss," and the court was under no obligation to consider such newly-raised arguments. *Reconsideration Decision*, 2025 WL 2029841, at *2. On the merits, the district court determined that neither form of relief could be used to cure a constitutional standing defect present at the outset of the lawsuit. *Id.*

We conclude that the district court did not abuse its discretion in denying either form of equitable relief. "A court may exercise jurisdiction only if a plaintiff has standing to sue on the date it files suit." *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1364 (Fed. Cir. 2010) (citing *Keene Corp. v. United States*, 509 U.S. 200, 207 (1993)). "[I]n order to assert standing for patent infringement, the plaintiff must demonstrate that it held enforceable title to the patent *at the inception of the lawsuit*." *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1309 (Fed. Cir. 2003) (emphasis in original). As explained above, AIT lacked constitutional standing on the date it filed suit. AIT has cited no cases under our precedent, nor have we found any, that indicate that a party can cure a lack of constitutional standing pursuant to Rule 17(a)(3) ratification or contract reformation. The district court therefore did not abuse its discretion in denying either form of relief.

Case: 25-2026 Document: 46 Page: 12 Filed: 03/16/2026



## CONCLUSION

We have considered AIT's remaining arguments but find them unpersuasive. For the foregoing reasons, we *affirm* the decision of the district court.

**AFFIRMED**