Michael A. Burke, Esq. (NSB #11527)
SBW LAW GROUP
3600 Mayberry Dr.
Reno, NV 89509
Telephone: (775) 299-4051
Email: mburke@sbwlawgroup.com

Michael DeVincenzo, Esq. (*pro hac vice*)
HECHT PARTNERS LLP
125 Park Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 851-6821
Email: mdevincenzo@hechtpartners.com

*Attorneys for Plaintiff*
*Applications in Internet Time, LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

APPLICATIONS IN INTERNET TIME, LLC,

Plaintiff,

v.

SALESFORCE, INC.,

Defendant.

Civil Action No.: 3:25-cv-00476-MMD-CLB

**PLAINTIFF APPLICATIONS IN INTERNET TIME, LLC'S OPPOSITION TO DEFENDANT SALESFORCE, INC.'S MOTION TO DISMISS THE COMPLAINT**

**ORAL ARGUMENT REQUESTED**

## TABLE OF CONTENTS


**I.** INTRODUCTION ....1

**II.** BACKGROUND ....2

A. Salesforce's Multi-Year Stay Delayed AIT's Diligent Prosecution of Its Claims ....2

B. AIT Produced the Ownership Agreements in the Ordinary Course of Discovery ....2

C. AIT Continued to Act Diligently After Salesforce Raised the Ownership Issue ....3

**III.** ARGUMENT ....4

A. Salesforce's Motion to Dismiss Should Be Denied ....4

1. Salesforce Has Failed to Demonstrate This Action Implicates Claim Splitting ....4

a. The Filing of a Second Action After Final Judgment Is Not Claim Splitting ....4

b. The Second Action Falls Within Recognized Exceptions to Claim Splitting ....6

2. If Claim Splitting Applies, a Stay Is the Appropriate Remedy ....7

3. Salesforce Fails to Establish That Dismissal Is Appropriate ....8

a. Dismissal Could Severely Prejudice AIT ....9

b. The Parties' Actions Do Not Support Dismissal ....9

B. AIT Should Be Granted Equitable Tolling of Damages Under § 286 ....11

1. Section 286 Is a Statute of Limitations Subject to Equitable Tolling ....11

a. The Presumption of Tolling Applies ....11

b. Salesforce Identifies Nothing that Rebuts the Presumption ....13

2. AIT Is Entitled to Equitable Tolling ....15

a. Tolling Is Permitted After Dismissal Without Prejudice and Refiling ....15

b. The Equities of This Case Support Tolling ....16

c. AIT Pursued Its Rights Diligently ....19

d. Salesforce's Remaining Objections Do Not Defeat Tolling ....21

3. Whether Tolling Applies Cannot Be Resolved Against AIT on the Pleadings....23

**IV.** CONCLUSION ....24

## EXHIBITS

| Exhibit | Description |
|---|---|
| A | September 12, 2025 E-mail from Salesforce counsel to AIT counsel |
| B | Declaration of Beverly G. Nelson (Apr. 25, 2025), First Action ECF No. 476-1 |
| C | Quitclaim Assignment (Apr. 25, 2025), First Action ECF No. 476-5 |
| D | Declaration of Douglas H. Sturgeon (Oct. 28, 2022), First Action ECF No. 306-4 |
| E | Petition for a Writ of Certiorari, *Applications in Internet Time, LLC v. Salesforce, Inc.*, No. 26-653 (Nov. 9, 2026) |
| F | *Medtronic Ireland Mfg. Unlimited Co. v. Recor Medical, Inc.*, No. 25-cv-05881-TLT, ECF No. 76 |
| G | Proposed First Amended Complaint, with changes marked against the Complaint (ECF No. 2) |

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*A. Stucki Co. v. Buckeye Steel Castings Co.*,
963 F.2d 360 (Fed. Cir. 1992) .......... 11, 12, 13, 15, 20

*A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*,
960 F.2d 1020 (Fed. Cir. 1992) .......... 11, 12

*Adams v. California Dep't of Health Servs.*,
487 F.3d 684 (9th Cir. 2007) .......... *passim*

*Alltrade, Inc. v. Uniweld Prods., Inc.*,
946 F.2d 622 (9th Cir. 1991) .......... 9

*Anderson v. Idaho*,
No. 1:24-CV-00138-DCN, 2026 WL 309598 (D. Idaho Feb. 5, 2026) .......... 5

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .......... 24

*Anza Tech., Inc. v. Mushkin, Inc.*,
934 F.3d 1359 (Fed. Cir. 2019) .......... 12, 16

*Applications in Internet Time, LLC v. Salesforce, Inc.*,
No. 2024-1133, 2024 WL 4456271 (Fed. Cir. 2024) .......... 3

*Applications in Internet Time, LLC v. Salesforce, Inc.*,
No. 2025-2026, 2026 WL 731122 (Fed. Cir. 2026) .......... 19, 22

*Arellano v. McDonough*,
1 F.4th 1059 (Fed. Cir. 2021) .......... 12, 14

*Arellano v. McDonough*,
598 U.S. 1 (2023) .......... 13, 14

*Arendi S.A.R.L. v. LG Elecs. Inc.*,
47 F.4th 1380 (Fed. Cir. 2022) .......... 6

*B&B Hardware, Inc. v. Hargis Indus., Inc.*,
575 U.S. 138 (2015) .......... 22

*Bank of N.Y. v. Foothills at MacDonald Ranch Master Ass'n*,
329 F. Supp. 3d 1221 (D. Nev. 2018) .......... 25

*Boechler, P.C. v. Comm'r of Internal Revenue*,
596 U.S. 199 (2022) .......... 11, 13, 14

*Bralich v. Sullivan*,
No. 17-00547, 2018 WL 11260505 (D. Haw. Apr. 10, 2018) ........ 15

*Burnett v. New York Central Railroad Co.*,
380 U.S. 424 (1965) ........ *passim*

*Carson City v. Price*,
113 Nev. 409, 934 P.2d 1042 (1997) ........ 24

*Cervantes v. Countrywide Home Loans, Inc.*,
656 F.3d 1034 (9th Cir. 2011) ........ 23, 25

*Chabad of Prospect, Inc. v. Louisville Metro Bd. of Zoning Adjustment*,
623 F. Supp. 3d 791 (W.D. Ky. 2022) ........ 6

*Chavez v. Dole Food Company, Inc.*,
836 F.3d 205 (3d Cir. 2016) ........ 11

*CMAX, Inc. v. Hall*,
300 F.2d 265 (9th Cir. 1962) ........ 8

*Doe v. Busby*,
661 F.3d 1001 (9th Cir. 2011) ........ 20

*E. & J. Gallo Winery v. Proximo Spirits, Inc.*,
583 F. App'x 632 (9th Cir. 2014) ........ 21

*Enbridge Energy, LP v. Nessel*,
146 S. Ct. 1074 (2026) ........ 13, 14

*Figueroa v. BNSF Ry. Co.*,
No. 4:17-CV-5096-TOR, 2018 WL 4183251 (E.D. Wash. June 5, 2018) ........ 16, 19

*Friends of the Earth, Inc. v. Crown Cent. Petroleum Corp.*,
95 F.3d 358 (5th Cir. 1996) ........ 6

*Fulfillium v. ReShape Medical LLC*,
No. 8:18-cv-01265-RGK-PLA, 2019 WL 13038364 (C.D. Cal. May 27, 2019) ........ 5

*Harper v. Amur Equip. Fin., Inc.*,
No. 3:25-CV-00436-YY, 2025 WL 3080286 (D. Or. Sept. 8, 2025) ........ 6

*Hatfield v. Halifax PLC*,
564 F.3d 1177 (9th Cir. 2009) ........ 16, 21, 23

*Holland v. Fla.*,
560 U.S. 631 (2010) ........ 14, 15, 17, 20

*Holt v. County of Orange*,
91 F.4th 1013 (9th Cir. 2024) ........ 22

*Hughes Aircraft Co. v. Nat'l Semiconductor Corp.*,
850 F. Supp. 828 (N.D. Cal. 1994) ........ 13

*Humphreys v. United States*,
272 F.2d 411 (9th Cir. 1959) ........ 21, 22

*In re Applications in Internet Time, LLC*,
No. 2020-143 (Fed. Cir. 2020) ........ 20

*Insulet Corp. v. EOFlow, Co.*,
176 F.4th 1347 (Fed. Cir. 2026) ........ 9, 12, 14, 16

*Intellectual Tech LLC v. Zebra Techs. Corp.*,
101 F.4th 807 (Fed. Cir. 2024) ........ 19

*Irwin v. Dep't of Veterans Affs.*,
498 U.S. 89 (1990) ........ 11, 16, 17

*Jones v. Las Vegas Metro. Police Dep't*,
873 F.3d 1123 (9th Cir. 2017) ........ 18, 21

*Kennedy v. Basil*,
531 F. Supp. 3d 828 (S.D.N.Y. 2021) ........ 24

*Kennedy v. Floridian Hotel, Inc.*,
998 F.3d 1221 (11th Cir. 2021) ........ 6

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ........ 24

*Landmark Screens, LLC v. Morgan, Lewis, & Bockius, LLP*,
676 F.3d 1354 (Fed. Cir. 2012) ........ 19

*Lans v. Digital Equipment Corp.*,
252 F.3d 1320 (Fed. Cir. 2001) ........ 19, 20, 22

*Larocque v. City of Los Angeles*,
760 F. Supp. 3d 1007 (C.D. Cal. 2024) ........ 23

*Lockyer v. Mirant Corp.*,
398 F.3d 1098 (9th Cir. 2005) ........ 8

*Marti v. Iberostar Hoteles y Apartamentos S.L.*,
No. 20-20078, 2023 WL 4532198 (S.D. Fla. July 13, 2023) ........ 23

*Medtronic Ireland Mfg. Unlimited Co. v. Recor Medical, Inc.*,
No. 25-cv-05881-TLT, ECF No. 76 (N.D. Cal. Mar. 24, 2026) ........ 5, 7

*Menominee Indian Tribe of Wisconsin v. U.S.*,
577 U.S. 250 (2016) ........ 19

*Molander v. Google LLC*,
473 F. Supp. 3d 1013 (N.D. Cal. 2020) ........ 9

*Nat. Res. Def. Council, Inc. v. Sw. Marine Inc.*,
242 F.3d 1163 (9th Cir. 2001) ........ 4

*O'Donnell v. Vencor Inc.*,
466 F.3d 1104 (9th Cir. 2006) ........ 23

*Oliney v. Gardner*,
771 F.2d 856 (5th Cir. 1985) ........ 6, 10, 11, 17

*Pa. Pub. Sch. Emp' Ret. Sys. v. Morgan Stanley & Co.*,
814 F.3d 641 (2d Cir. 2016) ........ 21

*Park B. Smith, Inc. v. CHF Indus. Inc.*,
811 F. Supp. 2d 766 (S.D.N.Y. 2011) ........ 18

*Pentagen Techs. Int'l Ltd. v. United States*,
175 F.3d 1003 (Fed. Cir. 1999) ........ 13

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
572 U.S. 663 (2014) ........ 12, 13, 14

*Platoro Ltd. v. Unidentified Remains of a Vessel*,
614 F.2d 1051 (5th Cir. 1980) ........ 16

*Rittmann v. Amazon, Inc.*,
No. C16-1554, 2024 WL 4932745 (W.D. Wash. Dec. 2, 2024) ........ 23

*Rolls-Royce PLC v. United Techs. Corp.*,
No. 1:10-cv-457, 2011 WL 1740143 (E.D. Va. May 4, 2011) ........ 15

*Rygg v. Hulbert*,
No. C14-237 MJP, 2014 WL 5023627 (W.D. Wash. Oct. 8, 2014) ........ 6

*SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*,
580 U.S. 328 (2017) ........ 12, 13, 14, 15

*Seeley v. Pub. Emps. Ret. Bd.*,
No. 3:24-CV-01828-YY, 2025 WL 4103639 (D. Or. Aug. 11, 2025) ........ 5

*Sidney v. Zah*,
718 F.2d 1453 (9th Cir. 1983) ........ 7

*Single Chip Sys. Corp. v. Intermec IP Corp.*,
495 F. Supp. 2d 1052 (S.D. Cal. 2007) ........ 6

*Sound Around, Inc. v. O'Donnell*,
No. 23-12479, 2025 WL 2887175 (11th Cir. Oct. 10, 2025) ........ 6

*Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*,
2023 WL 7135236 (S.D.N.Y. Oct. 30, 2023) .......... 18

*Standard Oil Co. v. Nippon Shokubai Kagaku Kogyo Co.*,
754 F.2d 345 (Fed. Cir. 1985) .......... 11, 12, 15

*Superama Corp., Inc. v. Tokyo Broad. Sys. Television, Inc.*,
No. CV 22-0299-MWF (JCX), 2025 WL 4061973 (C.D. Cal. Dec. 2, 2025) .......... 5

*Supermail Cargo, Inc. v. United States*,
68 F.3d 1204 (9th Cir. 1995) .......... 24

*U.S. Philips Corp. v. Iwasaki Elec. Co.*,
505 F.3d 1371 (Fed. Cir. 2007) .......... 22

*U.S. v. Beggerly*,
524 U.S. 38 (1998) .......... 15

*United States v. Brockamp*,
519 U.S. 347 (1997) .......... 13, 14

*United States v. Kwai Fun Wong*,
575 U.S. 402 (2015) .......... 11

*United States v. Pan-Am. Petroleum Co.*,
55 F.2d 753 (9th Cir. 1932) .......... 7

*Valenzuela v. Kraft, Inc.*,
801 F.2d 1170 (9th Cir. 1986), *amended*, 815 F.2d 570 (9th Cir. 1987) .......... *passim*

*Valtrus Innovations, Ltd. v. Google LLC*,
No. 25-CV-07063-PCP, 2026 WL 734528 (N.D. Cal. Mar. 16, 2026) .......... 6

*Valtrus Innovations, Ltd. v. Google LLC*,
839 F. Supp. 3d 861 (N.D. Cal. 2026) .......... 6, 21

*Walton v. Eaton Corp.*,
563 F.2d 66 (3d Cir. 1977) .......... 4

*Welk Biology Co. Ltd. v. Hakumo LLC*,
No. 2:24-cv-01613-APG-NJK, 2025 WL 2421232 (D. Nev. Aug. 20, 2025) .......... 24

*Wilkins v. United States*,
598 U.S. 152 (2023) .......... 11

*Young v. United States*,
535 U.S. 43 (2002) .......... 12, 14

**Statutes**

28 U.S.C. § 1338(a) .......... 11

28 U.S.C. § 1367(d) .......... 22

35 U.S.C. § 27 .......... 14

35 U.S.C. § 41(c)(1) .......... 14

35 U.S.C. § 286 .......... *passim*

35 U.S.C. § 287(a) .......... 22

**Rules**

Fed. Cir. R. 28(b) .......... 18

Fed. R. Civ. P. 4(m) .......... 10

Fed. R. Civ. P. 12(d) .......... 24

Fed. R. Civ. P. 15(a)(2) .......... 25

Fed. R. Civ. P. 17 .......... 3, 18, 19, 21, 22

**Other Authorities**

Restatement (Second) of Judgments § 26 .......... 7

# I. INTRODUCTION

For thirteen years, AIT has tried to get a jury to decide whether Salesforce infringes the '482 and '111 patents. It has never had that chance. Salesforce sought three stays to pursue repeat collateral attacks on AIT's patents in the Patent Office, and obtained one that lasted nearly five years, from 2016 to 2021, including an appeal to the Federal Circuit. When the Court denied Salesforce's third request for a stay, it found that Salesforce had engaged in "tactical gamesmanship" and that a further stay would be "unconscionable." FA ECF 391 at 5–7.[1]

After the stay ended in 2021, the parties engaged in claim construction, fact and expert discovery, and dispositive motions in 2021–2023, followed by a second appeal in 2023–2024. In March 2025, the Court dismissed the complaint without prejudice based on a defect in AIT's title. AIT promptly requested permission to cure that defect, and when that request was unsuccessful it noticed its appeal and refiled the complaint, as the dismissal without prejudice entitled it to do.

Salesforce argues that AIT may not both appeal the dismissal and refile, and that § 286 bars all damage recovery before August 29, 2019. Salesforce is wrong on both issues. Claim splitting is implicated when a party maintains two actions on the same claims at the same time in the same court. It does not apply when, as here, a second action was filed ***after*** final judgment in the first, and the first was dismissed without prejudice. And even if the doctrine applied, the proper remedy would be a stay, not dismissal. Indeed, AIT agrees to stay this action until all appeals are exhausted.

Section 286 likewise poses no bar to damages recovery. It is a nonjurisdictional statute of limitations, and such statutes are presumptively subject to equitable tolling. AIT meets the standard: it filed timely, pursued its rights diligently for over a decade, and circumstances prevented it from obtaining a merits ruling, among them years of stays Salesforce obtained and a title question Salesforce itself asked to defer. Salesforce has not only defended these claims, on these patents and products, since 2013, it affirmatively litigated counterclaims during that time and suffers no unfair surprise.

---

[1] "FA ECF" and "ECF" cite the dockets in the First Action (No. 3:13-cv-00628) and this action ("Second Action"), respectively; "*AIT I* ECF" and "*AIT II* ECF" cite the Federal Circuit dockets in Nos. 2024-1133 and 2025-2026 ("*AIT I*" and "*AIT II*," respectively). AIT otherwise adopts defined terms in Salesforce's motion (ECF 32, "Mot"). "Ex." refers to exhibits to the Declaration of Michael DeVincenzo ("DeVincenzo Decl."), filed herewith.

## II. BACKGROUND

### A. Salesforce's Multi-Year Stay Delayed AIT's Diligent Prosecution of Its Claims

AIT sued Salesforce on November 8, 2013, asserting the '482 and '111 patents. FA ECF 1. Ever since, Salesforce has controlled much of the pace of the case, seeking to delay and derail the proceedings at every opportunity.

In August 2014, Salesforce challenged the validity of AIT's patents before the Patent Trial and Appeal Board (PTAB) and moved to stay the First Action. FA ECF 49. This first time AIT did not oppose, and the case was stayed from August 25, 2014 until April 27, 2015. FA ECF 51, 54, 56, 58. Almost immediately, in August 2015, Salesforce and RPX Corporation ("RPX") challenged the same patents again before the PTAB. Salesforce moved to stay again in October 2015. This time AIT opposed, and the Court denied the motion. FA ECF 66, 69, 76. Salesforce renewed the motion in March 2016, again over AIT's opposition, and the Court stayed the case on June 14, 2016. FA ECF 77, 78, 82. That second stay lasted nearly five years, from June 2016 to March 2021, despite AIT's request to lift the stay after the PTAB's decisions in July 2018 were vacated. FA ECF 105. The Court lifted the stay on March 2, 2021, again on AIT's motion and over Salesforce's opposition, after the PTAB issued a decision on remand terminating the proceedings. FA ECF 130, 134, 145.

### B. AIT Produced the Ownership Agreements in the Ordinary Course of Discovery

During the multi-year stay, as Salesforce itself represented, "no discovery was taken by either party." FA ECF 187-1 ¶¶ 11–12. As the Court noted early in the case, "[t]he parties agreed to wait until after the Court's *Markman* decision to complete discovery." FA ECF 76 at 5 (citing FA ECF 42 at 2). The Court construed the claims on November 9, 2021, FA ECF 172, and only then did discovery begin in earnest, concluding by mid-2022. During that time, AIT collected and produced roughly 150,000 pages of documents. DeVincenzo Decl. ¶ 4.

Salesforce's motion baldly asserts that AIT did not produce the 2002 and 2006 Agreements (the "Agreements") for eight years. Mot. 4, 22. It repeats its unsupported assertion to the Federal Circuit that AIT "improperly withheld" them. *AIT II* ECF 21 at 9; *see also id.* at 8, 42, 52. AIT and its counsel take strong exception to Salesforce's baseless characterization. DeVincenzo Decl. ¶¶ 6–7. The Agreements were never withheld: AIT never objected to producing them, and Salesforce never moved

to compel their production. *Id.* ¶ 5. They were collected from AIT's voluminous records and, upon collection, were reviewed and produced in the ordinary course. *Id.* ¶ 4.

**C. AIT Continued to Act Diligently After Salesforce Raised the Ownership Issue**

Salesforce did not raise ownership upon receiving the Agreements. Instead, Salesforce moved on June 15, 2022, to stay the case for a ***third*** time, based on yet another, duplicative challenge to AIT's patents before the Patent Office. FA ECF 223. AIT opposed, and the Court denied the motion. FA ECF 246, 391. The Court found that AIT "faces prejudice and a clear tactical disadvantage from staying this case," given that the case "has remained undecided for a significant amount of time due to previous reexaminations." FA ECF 391 at 4.

Salesforce moved to dismiss based on standing on September 30, 2022. FA ECF 281. Its motion rested on Mr. Sturgeon's deposition testimony and expert testimony, FA ECF 290 at 3–7, and followed the close of fact and expert discovery. The discovery deadlines did not depend on production of the Agreements, rendering Salesforce's suggestion that the production of the Agreements delayed resolution of standing unsupported. *See* FA ECF 76 at 5; FA ECF 198 at 3; Mot. 3–4. On March 14, 2023, the Court heard argument, FA ECF 387, 392, and ruled in Salesforce's favor on its motions for summary judgment, and thereafter the standing question was deferred at Salesforce's proposal. FA ECF 393 at 153:9–156:25; FA ECF 401-1 at 1. AIT spent 2023 and 2024 successfully appealing the merits judgment and a nearly $7 million fee award, obtaining expedited treatment of that appeal. *AIT I* ECF 25. Ultimately, the Federal Circuit vacated both. *AIT I*, 2024 WL 4456271, at *1, 7.

On remand, the Court heard argument on Salesforce's standing motion on March 4, 2025, and on March 28, 2025 it dismissed the First Action without prejudice. FA ECF 459, 469, 471. Thereafter, on April 25, 2025, AIT obtained Ms. Nelson's declaration and an assignment of any rights in the patents, and on the same day it moved for reconsideration, requesting ratification under Rule 17(a)(3) or reformation of the 2006 Agreement. FA ECF 476; Exs. B, C; FA ECF 481 at 2. On July 21, 2025, the Court denied reconsideration, but vacated judgment because Salesforce's counterclaims had not been fully adjudicated. FA ECF 481. Those counterclaims were dismissed without prejudice on August 5, 2025, ending the First Action in this Court. FA ECF 483, 484.

On August 7, 2025, AIT asked Salesforce to agree to toll damages under § 286 in lieu of a new

action. DeVincenzo Decl. ¶ 8. A week later, on August 14, 2025, AIT noticed its appeal. FA ECF 485. On August 15, 2025, AIT again asked Salesforce if it would agree to toll damages. DeVincenzo Decl. ¶ 9. Salesforce merely indicated it was considering the tolling request. *Id.* Mindful of the need for promptness, when Salesforce did not further respond, on August 29, 2025, AIT filed this action. *Id.*

## III. ARGUMENT

### A. Salesforce's Motion to Dismiss Should Be Denied

Salesforce urges that AIT's infringement claim be dismissed under the doctrine of claim splitting. Salesforce must establish: (1) that AIT's filing of a second action after final judgment is entered in a first action is improper claim splitting; and (2) that the equities compel dismissal of the second action rather than a stay. Salesforce fails on both counts.

#### 1. Salesforce Has Failed to Demonstrate This Action Implicates Claim Splitting

The salient facts are undisputed. The First Action ended in this Court on August 5, 2025; AIT noticed its appeal on August 14 and filed the Second Action on August 29. FA ECF 484, 485; ECF 2. Because the two actions were never co-pending in the district court, there was no claim splitting. Independently, the Second Action falls within recognized exceptions to the claim-splitting doctrine.

##### a. The Filing of a Second Action After Final Judgment Is Not Claim Splitting

Claim splitting occurs when a plaintiff files "two separate actions involving the same subject matter ***at the same time in the same court*** and against the same defendant." *Adams v. California Dep't of Health Servs.*, 487 F.3d 684, 688 (9th Cir. 2007) (emphasis added) (quoting *Walton v. Eaton Corp.*, 563 F.2d 66, 70 (3d Cir. 1977) (en banc)); *see* Mot. 16 (relying on *Adams*). As *Adams* explains, claim splitting occurs "where one district court ha[s] duplicative suits ***contemporaneously pending*** on its docket." *Id.* at 692 (emphasis added). Here, the First Action and the Second Action were never contemporaneously pending on this Court's docket. Indeed, "[o]nce a notice of appeal is filed, the district court is divested of jurisdiction over the matters being appealed." *Nat. Res. Def. Council, Inc. v. Sw. Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001).

Applying *Adams*, courts in this Circuit recognize a second action filed after a dismissal without prejudice is not claim splitting. In *Medtronic Ireland Mfg. Unlimited Co. v. Recor Medical, Inc.*, the court found claim splitting inapplicable on facts materially indistinguishable from those here. There,

the first action was dismissed without prejudice for lack of standing, and one week later the patentee filed a second action, naming an additional plaintiff, for the purpose of preserving damages in light of the expiration of the asserted patents. No. 25-cv-05881-TLT, ECF No. 76, slip op. at 7–9 (N.D. Cal. Mar. 24, 2026) (Ex. F). The court explained that "a pending appeal of a dismissal without prejudice based on jurisdiction is not equivalent to a second ongoing case for the purpose of claim-splitting." *Id.* at 8. And in *Fulfillium v. ReShape Medical LLC*, the Central District of California reached a similar result. There, the patentee filed a second complaint after its first complaint asserting the same patents was dismissed for lack of standing, because a co-owner had not been named as a plaintiff. No. 8:18-cv-01265-RGK-PLA, 2019 WL 13038364, at *3 (C.D. Cal. May 27, 2019). Although the second case "involve[d] the same three patents and the same allegations of infringement," claim splitting did not warrant a stay because the Federal Circuit "will either affirm or reverse the Court's dismissals; it will not resolve the case on its merits," leaving no risk of inconsistent results. *Id.* The same logic applies here: the appeal of the First Action concerns only AIT's standing, and cannot produce a merits judgment that the Second Action would impair.[2] Other courts in this Circuit have followed the same approach in applying *Adams*. *See Anderson v. Idaho*, No. 1:24-CV-00138-DCN, 2026 WL 309598, at *3 (D. Idaho Feb. 5, 2026) ("The anti-claim splitting doctrine does not apply once the other lawsuit has been dismissed without prejudice."); *Seeley v. Pub. Emps. Ret. Bd.*, No. 3:24-CV-01828-YY, 2025 WL 4103639, at *4 (D. Or. Aug. 11, 2025) (declining to dismiss second action filed during appeal of first action dismissed without prejudice); *Superama Corp., Inc. v. Tokyo Broad. Sys. Television, Inc.*, No. CV 22-0299-MWF (JCX), 2025 WL 4061973, at *1 (C.D. Cal. Dec. 2, 2025) (noting no decision was found "where claim-splitting was applied when the two cases were *not* simultaneously pending").

These decisions reflect a straightforward rationale. As one court put it, "claim-splitting requires an *ongoing* duplicative proceeding between the same parties based on the same transaction." *Chabad of Prospect, Inc. v. Louisville Metro Bd. of Zoning Adjustment*, 623 F. Supp. 3d 791, 798–99 (W.D. Ky. 2022) (quotation marks omitted). After a dismissal without prejudice, a later suit is not claim

---

[2] Salesforce's argument that a judgment in the First Action "would resolve liability and damages for the same period," Mot. 17, does not make this claim splitting. The appeal cannot produce a merits judgment that this action would impair. *See Fulfillium*, 2019 WL 13038364, at *3.

splitting "because only one suit is ongoing"; "[t]he whole point of dismissing without prejudice is to allow a subsequent suit." *Id.* at 799. In fact, applying the doctrine to a second action following a jurisdictional dismissal has been found to be reversible error. *See Sound Around, Inc. v. O'Donnell*, No. 23-12479, 2025 WL 2887175, at *8 (11th Cir. Oct. 10, 2025).

Salesforce urges that a plaintiff may not appeal a dismissal without prejudice that did not reach the merits in a first action and at the same time preserve its rights with a new action. Mot. 19. Salesforce fails to cite a single authority supporting that proposition. Instead, Salesforce relies heavily on *Valtrus Innovations, Ltd. v. Google LLC* (Mot. 20), which undercuts its position. In *Valtrus*, the patentee filed its second action ***before*** the first was dismissed, "rather than waiting to refile after such a dismissal." No. 25-CV-07063-PCP, 2026 WL 734528, at *9 (N.D. Cal. Mar. 16, 2026). On reconsideration, the court expressly recognized that "no claim splitting occur[s] where a plaintiff file[s] a second action after the entry of a final judgment in [a] first action but while the first action was being appealed." 839 F. Supp. 3d 861, 864 (N.D. Cal. 2026).

Salesforce's other authorities fare no better. First, save two, each involved a second suit filed while the first was still pending in the district court, often to evade an adverse ruling there. *Adams*, 487 F.3d at 687–88 (filed after leave to amend was denied); *Single Chip Sys. Corp. v. Intermec IP Corp.*, 495 F. Supp. 2d 1052, 1055–56 (S.D. Cal. 2007) (same); *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1226 (11th Cir. 2021) (filed before first dismissed); *Arendi S.A.R.L. v. LG Elecs. Inc.*, 47 F.4th 1380, 1382–83 (Fed. Cir. 2022) (filed after adverse evidentiary ruling); *Oliney v. Gardner*, 771 F.2d 856, 857–58 (5th Cir. 1985) (filed while first pending, with service withheld); *Friends of the Earth, Inc. v. Crown Cent. Petroleum Corp.*, 95 F.3d 358, 360 (5th Cir. 1996) (filed in response to summary judgment motion). The others involved plaintiffs who had already lost on the merits. *Rygg v. Hulbert*, No. C14-237 MJP, 2014 WL 5023627, at *1 (W.D. Wash. Oct. 8, 2014) (after jury verdict); *Harper v. Amur Equip. Fin., Inc.*, No. 3:25-CV-00436-YY, 2025 WL 3080286, at *1 (D. Or. Sept. 8, 2025) (after summary judgment). None found claim splitting based on a refiling after a jurisdictional dismissal and entry of judgment in the absence of a merits-based adjudication, as here.

**b. The Second Action Falls Within Recognized Exceptions to Claim Splitting**

Independently, the Second Action falls within the Ninth Circuit's "exceptions to the general

rule against claim splitting [as] recognized by the Restatement (Second) of Judgments § 26." *Sidney v. Zah*, 718 F.2d 1453, 1459 (9th Cir. 1983). Those exceptions apply where "[t]he court in the first action has expressly reserved the plaintiff's right to maintain the second action," or where a plaintiff was unable "to seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts." Restatement (Second) of Judgments § 26(1)(b)–(c).

The exception applies where the first action was dismissed without prejudice for lack of Article III standing. The Ninth Circuit recognizes that where one part of a claim "is incapable of recovery in that particular action," it "may be made the subject of a separate action without offending against the rule prohibiting the splitting of causes of action." *United States v. Pan-Am. Petroleum Co.*, 55 F.2d 753, 777–78 (9th Cir. 1932) (citation omitted). Similarly, the *Medtronic* court held that, "[u]pon the dismissal without prejudice, Medtronic exercised its reserved right to file *Recor II*, and because of the lack of constitutional standing in *Recor I*, Medtronic is only able to seek its remedy related to patent infringement through *Recor II*." *Medtronic*, slip op. at 9. Likewise, this Court dismissed the First Action without prejudice, thereby reserving AIT's right to bring a new action. And because the Court held that AIT lacked standing, AIT can obtain a remedy only through the Second Action. Salesforce contends that a dismissal without prejudice does not preserve "the right to sue twice at the same time," Mot. 18 n.5. But Salesforce ignores final judgment was entered before AIT brought the Second Action.

Salesforce's attempt to confine the § 26(1)(c) claim splitting exceptions to supposed "formal barriers," Mot. 18 n.5, is a non-starter. Salesforce argues that "[n]othing barred this Court from adjudicating AIT's infringement claims," while conceding, "AIT's lack of title did." *Id*. The "formal barrier" to relief in the First Action was title, and title has since been cured. Salesforce ignores the purpose of the exception: a plaintiff should not lose a claim it was unable to present in the first action. *See* Restatement § 26 cmt. c ("[I]t is unfair to preclude [a plaintiff] from a second action in which he can present those phases of the claim which he was disabled from presenting in the first."). A claim the Court held it was powerless to entertain for lack of jurisdiction is precisely such a claim.

**2. If Claim Splitting Applies, a Stay Is the Appropriate Remedy**

Upon a finding of claim splitting, the Court may "stay [this] action pending resolution of the previously filed action." *Adams*, 487 F.3d at 688. As discussed above, claim splitting did not arise in

this case. But whether or not it did, AIT agrees to stay this action until conclusion of the appeal. Indeed, on September 10, 2025, shortly after filing this action, AIT ***asked*** Salesforce to agree to a stay pending resolution of the appeal, and Salesforce refused. DeVincenzo Decl. ¶ 10, Ex. A.

In deciding whether to stay proceedings, courts weigh "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)). Each factor favors a stay. A stay will cause Salesforce no cognizable damage: the asserted patents have expired, so there is no ongoing conduct to enjoin, and Salesforce faces no litigation activity while the case is stayed. And a stay serves the orderly course of justice: if AIT prevails on appeal, this action can be dismissed or consolidated; if not, this action will proceed without the need for a third action.[3]

Salesforce urges that a stay would be indefinite and therefore should not be granted. Mot. 21–22. The stay's duration will be determined by the Supreme Court's disposition of AIT's petition for certiorari, which was filed on November 9, 2026 (Ex. E). While AIT is confident in the merits of its petition, it is also realistic, as only a small percentage of petitions are granted. And even if the stay lasts until 2028 as Salesforce argues (Mot. 22), the burden on the parties and the Court would be minimal, if any. And having obtained a nearly five-year stay of the First Action over AIT's objections, *see supra* § II.A, Salesforce cannot credibly claim prejudice from a far shorter stay here.

**3. Salesforce Fails to Establish That Dismissal Is Appropriate**

To obtain dismissal, Salesforce must demonstrate both that AIT engaged in improper claim splitting, and separately that the equities require dismissal, rather than a stay, after "weighing the equities of the case." *Adams*, 487 F.3d at 688. Here, the balance of the equities strongly tilts in AIT's

[3] A stay might also avoid the time and effort required in resolving the equitable tolling question (Section III.B). Salesforce asks the Court to decide that question now, "regardless of whether it dismisses, stays, or retains" the case. Mot. 8. But if AIT's petition succeeds, the First Action will proceed on its 2013 complaint and tolling will be unnecessary. Deciding a contested question that may never matter would complicate, not simplify, the issues. *See Lockyer*, 398 F.3d at 1110.

favor. Dismissal could cause AIT great harm under § 286. Nor should AIT be penalized for its diligence during the First Action, despite Salesforce's disingenuous accusations of "gamesmanship." Mot. 22.

**a. Dismissal Could Severely Prejudice AIT**

Dismissal of the Second Action, even without prejudice, could carry severe consequences for AIT. Salesforce falsely states that "[d]ismissal … costs AIT nothing to which it is entitled" because, after the Supreme Court rules on its petition, "AIT remains free to file a properly constituted action, with damages measured from its own filing date." Mot. 23. But under Salesforce's theory that no tolling is available, every month without a pending action erases another month of the roughly 27 months of damages that remain. *Id.* at 1, 8. Moreover, Salesforce concedes that a decision from the Supreme Court "may not come until 2028." *Id.* at 22. By then, the six-year period of limitations will have run out. Thus, if the Court dismisses the Second Action, even without prejudice, AIT faces the risk, in the absence of tolling, of forfeiting all recovery of damages. "[A] dismissal nominally without prejudice may effectively be a dismissal with prejudice if the statute of limitations has run." *Insulet Corp. v. EOFlow, Co.*, 176 F.4th 1347, 1352 (Fed. Cir. 2026). In the Ninth Circuit, where the potential prejudice to a plaintiff from dismissal "would ***risk encountering statute of limitations problems***," a stay is the proper remedy. *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 629 (9th Cir. 1991) (emphasis added) (reversing dismissal as abuse of discretion); see *also Molander v. Google LLC*, 473 F. Supp. 3d 1013, 1020 (N.D. Cal. 2020) (stay appropriate where a first action's dismissal "might implicate a statute of limitations").

**b. The Parties' Actions Do Not Support Dismissal**

AIT does not deserve the prejudice that a dismissal would carry. AIT diligently pursued its claims in the First Action, and filed the Second Action "only after this Court dismissed the First Action…" Mot. 20. Upon dismissal, on August 5, 2025, AIT immediately asked Salesforce to agree to toll damages, noticed its appeal, and, when Salesforce indicated it was considering the proposal but otherwise failed to respond for two weeks, AIT promptly filed the Second Action. *See* DeVincenzo Decl. ¶ 9; *supra* § II.C; *infra* § III.B.2.c. AIT was not required to concede standing, and accepting dismissal would have forfeited the position that AIT is now seeking to preserve on appeal.

Salesforce's accusations of improper or dilatory conduct are particularly unfounded given its

representations to this Court and the Federal Circuit. At the March 2025 hearing before this Court, Salesforce's counsel stated that "with respect to constitutional standing, if the case is dismissed, then, ***obviously***, the standing event has to be cured and ***they [AIT] have to refile the case***." FA ECF 474 at 32 (emphasis added). In May 2026, Salesforce told the Federal Circuit that "[AIT] has already filed a new complaint asserting the same patents against Salesforce … ***consistent with the dismissal below being without prejudice***." *AIT II* ECF 52 at 4 (emphasis added).[4] After leveraging the Second Action to persuade the Federal Circuit to deny AIT rehearing, Salesforce now invokes the possibility of appellate relief as a reason to dismiss that same Second Action. That reversal of position weighs heavily against the discretionary, equitable relief Salesforce seeks. *Adams*, 487 F.3d at 688.

Salesforce cannot recast as "gamesmanship" conduct that tracked its own representations. AIT opposed Salesforce's standing motion in good faith, *see infra* §§ III.B.2.b–c, and when this Court ruled otherwise, AIT appealed, cured the defect, and refiled precisely as the law permits and Salesforce itself suggested. That is not improper, let alone gamesmanship.

Salesforce's allegations of improper conduct on the part of AIT during the pendency of this action are similarly baseless. Salesforce urges that AIT's failure to "timely serve process" supports dismissal. Mot. 19, 21. But AIT complied with Rule 4(m) at every step. AIT sought leave for an extension before each service deadline expired, each time for 60 days, and identified good cause tied to a concrete development in that action. The Court granted each request. ECF 16, 20, 22, 25, 27. This is a far cry from Salesforce's cases. In *Oliney*, the plaintiff filed a second complaint while the first action was still pending and simply withheld service until after the first action was dismissed, without notice to the court or opposing counsel. 771 F.2d at 858–59. And *Chavez* recognized only that dismissal "may be appropriate" where duplicative litigation results from a plaintiff's "repeatedly failing to timely serve process." 836 F.3d at 221.

Any burden from this action is of Salesforce's own making. AIT offered to toll damages in lieu of filing it and asked Salesforce to agree to a stay; Salesforce refused both. *See supra* § II.C; DeVincenzo Decl. ¶¶ 8–10, Ex. A. Having insisted on a second action and refused any alternatives,

---

[4] Salesforce never addresses its statement to this Court that AIT would "have to refile the case"; it says only that its Federal Circuit statements conceded nothing. Mot. 23.

Salesforce cannot now seek dismissal based on alleged burdens associated with its prosecution.

**B. AIT Should Be Granted Equitable Tolling of Damages Under § 286**

Salesforce's request to foreclose equitable tolling under 35 U.S.C. § 286 should be denied. Section 286, like other federal limitations periods, is presumptively subject to equitable tolling. AIT meets the requirements for equitable tolling based on its prior action, and Salesforce never addresses equitable tolling based on a prior action between the same parties.

**1. Section 286 Is a Statute of Limitations Subject to Equitable Tolling**

**a. The Presumption of Tolling Applies**

Equitable tolling is "a background principle against which Congress drafts limitations periods," such that "nonjurisdictional limitations periods are presumptively subject to equitable tolling." *Boechler, P.C. v. Comm'r of Internal Revenue*, 596 U.S. 199, 208–09 (2022) (citing *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 95–96 (1990)). A time bar is jurisdictional "only if Congress 'clearly states' that it is," and "most time bars are nonjurisdictional." *Wilkins v. United States*, 598 U.S. 152, 157–58 (2023) (citations omitted). Section 286 provides only that "no recovery shall be had," without any reference to jurisdiction.[5] That text "speaks only to a claim's timeliness," not a court's power, and Congress placed the jurisdictional grant elsewhere, in 28 U.S.C. § 1338(a). *See United States v. Kwai Fun Wong*, 575 U.S. 402, 410–12 (2015); *Wilkins*, 598 U.S. at 159.

Salesforce does not argue that § 286 is jurisdictional. It argues instead that § 286 is "not a statute of limitations" but a limitation on damages recovery, and that tolling is foreclosed under § 286. Mot. 10–11 (citing *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1030 (Fed. Cir. 1992) (en banc); *Standard Oil Co. v. Nippon Shokubai Kagaku Kogyo Co.*, 754 F.2d 345, 348 (Fed. Cir. 1985); *A. Stucki Co. v. Buckeye Steel Castings Co.*, 963 F.2d 360, 362–65 (Fed. Cir. 1992)).

First, Salesforce's attempt to label § 286 as not a traditional statute of limitations does not bear on the dispositive question: whether § 286 is jurisdictional. Whatever its label, § 286 is a nonjurisdictional limitation on damages, so the presumption that tolling is available applies. *SCA*

[5] Salesforce's reliance on *Aukerman* and *Standard Oil* (Mot. 10), and on the pre-*SCA Hygiene* description of § 286 as "not, strictly speaking, a statute of limitations," *Stucki*, 963 F.2d at 363 n.3, goes only to labels. Salesforce does not argue, and cites nothing holding, that § 286 is jurisdictional.

*Hygiene* held that § 286's backward-running structure provided no basis to distinguish the Copyright Act's "three-year look-back limitations period," and made clear that labels were simply a "debatable taxonomy" on which "nothing depends." *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 580 U.S. 328, 336–38 (2017) (quoting *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 670 (2014)). The Court then expressly treated § 286 as "a statute of limitations for damages." *Id.* at 339. That accords with *Young v. United States*, which held that a look-back period limiting only some remedies is "a statute of limitations nonetheless" and may be tolled. 535 U.S. 43, 47–48 (2002). Since *SCA Hygiene*, the Federal Circuit has consistently recognized § 286 is a statute of limitations, rejecting the argument that it "merely prevents recovery" as "a distinction without a difference." *Insulet*, 176 F.4th at 1352–53; *see also Anza Tech., Inc. v. Mushkin, Inc.*, 934 F.3d 1359, 1362 (Fed. Cir. 2019). Even the six en banc judges who rejected tolling of the veterans' provision in *Arellano v. McDonough* distinguished § 286 from the veterans' provision because it "function[s] just as a traditional statute of limitations would." 1 F.4th 1059, 1071 (Fed. Cir. 2021) (en banc) (Chen, J., concurring).

Second, contrary to Salesforce's argument, *Stucki* did not hold that equitable tolling is unavailable under § 286 or that its presumption does not apply. *Stucki* refused to import into § 286 the so-called "other litigation" excuse that can defeat laches, because § 286 "operates independently of the equitable defenses of laches and estoppel." 963 F.2d at 363 (recognizing mere fact that courts have "'borrowed' the six-year damage limitation period of § 286 as the time period for giving rise to a rebuttable presumption of laches … does not otherwise link the two concepts" of laches and § 286). *Petrella* similarly recognized that laches cannot override a congressional time limit because it is "gap-filling, not legislation-overriding," and "can scarcely be described as a rule for interpreting a statutory prescription." 572 U.S. at 680–82. The Court further acknowledged that, unlike laches, equitable tolling "is read into every federal statute of limitation," and explained that it "applies when there is a statute of limitations" and is "a rule of interpretation tied to that limit." *Id.* at 681. *SCA Hygiene* applied *Petrella* to § 286, and *Petrella*'s account of tolling as a rule tied to a statutory limit applies equally to § 286. Seven years after *Stucki*, the Federal Circuit itself analyzed whether to equitably toll the recovery bar for government copyright infringement which it noted was "virtually identical" to § 286. *Pentagen Techs. Int'l Ltd. v. United States*, 175 F.3d 1003, 1005 (Fed. Cir. 1999). It rejected tolling

in that case only because the complaint lacked the necessary allegations, not because the statute was not subject to tolling. *Id* at 1004–05. Indeed, Salesforce's request that this Court read *Stucki* to preclude tolling in patent cases is flatly inconsistent with subsequent Supreme Court and Federal Circuit authority. Such expansive reading is further inconsistent with *Hughes* where the Court explained that *Stucki*'s "actual holding is quite narrow," rejecting only "the equitable exception which Stucki proposed," and further finding that the § 286 period "is not jurisdictional," and therefore may be tolled. *Hughes Aircraft Co. v. Nat'l Semiconductor Corp.*, 850 F. Supp. 828, 832 (N.D. Cal. 1994).

**b. Salesforce Identifies Nothing that Rebuts the Presumption**

Because the presumption applies to § 286, equitable tolling is available unless there is "good reason to believe that Congress did not want the equitable tolling doctrine to apply," stemming from the statute's text, structure, and context. *United States v. Brockamp*, 519 U.S. 347, 350 (1997); *see also Enbridge Energy, LP v. Nessel*, 146 S. Ct. 1074, 1082, 1084–85 (2026). Salesforce does not dispute that § 286 is a "nonjurisdictional limitations period," *Boechler*, 596 U.S. at 208–09, and it identifies nothing that overcomes the presumption.

First, nothing in the language of § 286 suggests Congress "did not want the equitable tolling doctrine to apply." *Brockamp*, 519 U.S. at 350. The Supreme Court finds the presumption rebutted where Congress built equitable considerations into a provision itself such that the limitation at issue already "reflect[s] equitable considerations." *Enbridge*, 146 S. Ct. at 1083 (quoting *Arellano v. McDonough*, 598 U.S. 1, 9 (2023)). Section 286 has no equitable exceptions. Its only exception stops the clock while a written claim is pending before a government agency. § 286. That proviso requires no equitable showing and serves a need specific to claims against the United States. Like the express exceptions in *Holland*, it "undermine[s]" rather than supports any inference against tolling. *Enbridge*, 146 S. Ct. at 1086 (citing *Holland v. Fla.*, 560 U.S. 631, 648 (2010)). The statutes on which Salesforce relies are different in kind. Mot. 11. The removal statutes in *Enbridge* contained a discovery-type rule, a "bad faith" exception, and "for cause shown" provisions that "would be inexplicable and unnecessary" if tolling were already available. 146 S. Ct. at 1083. In *Brockamp*, the refund statute's "detail, its technical language, the iteration of the limitations in both procedural and substantive forms, and the explicit listing of exceptions, taken together," showed that Congress did not intend tolling. 519

U.S. at 352. And the provision in *Arellano* contained sixteen exceptions including equitable exceptions. 598 U.S. at 8–9; *see Enbridge*, 146 S. Ct. at 1082–83. Section 286 has none of these features. Nor do 35 U.S.C. §§ 27 and 41(c)(1) help Salesforce. Mot. 11. Those provisions govern Patent Office procedure for reviving patent applications and accepting late fees; they say nothing about § 286.

Second, Salesforce asserts that because § 286 limits recovery rather than setting a filing deadline, it has no "running period for equity to suspend," and tolling would enlarge the recovery. Mot. 10–11. Both premises fail. Under § 286, "each individual act of patent infringement gives rise to a discrete claim that starts its own six-year limitations period." *Arellano*, 1 F.4th at 1071 (Chen, J., concurring); *see Insulet*, 176 F.4th at 1352–53. And *Young* tolled just such a look-back period even though doing so extended the reach of the government's claim. 535 U.S. at 47–48, 50–51. Neither *Brockamp* nor *Arellano* (Mot. 11) rested on the bare fact that a statute limited recovery; each turned on detailed statutory exceptions, which § 286 lacks.[6]

Third, Salesforce argues tolling would "jettison Congress' judgment on the timeliness of suit" or create a "cloud of uncertainty." Mot. 12 (citations omitted). Salesforce ignores that equitable tolling is "a background principle against which Congress drafts limitations periods." *Boechler*, 596 U.S. at 208–09. Indeed, *Petrella* and *SCA Hygiene* held that laches, a judge-made defense, cannot shorten the damages limitation period Congress chose; neither suggested that the period is immune from the tolling principles against which Congress legislates. *See Young*, 535 U.S. at 49–50. Nor is there any "cloud." The tolling AIT seeks is bounded by the pendency of an action Salesforce has defended since 2013, *see Burnett v. New York Central Railroad Co.*, 380 U.S. 424, 430 (1965), unlike the twelve-year period, already extended by a discovery rule, in *U.S. v. Beggerly*, 524 U.S. 38, 48–49 (1998).

Finally, *Stucki* does not help Salesforce. Mot. 10 (relying on *Stucki*, 963 F.2d at 362–65). There, the patentee first sued the defendant years after it "withdrew its motion to join" that defendant in an earlier action, and "elect[ed] to proceed" against others instead. 963 F.2d at 362. Stucki then asked the court to import into § 286 the "other litigation" excuse based on its timely litigation against third parties that can overcome a laches defense. *Id.* at 363. The Federal Circuit declined, explaining that § 286

[6] In *Arellano*, the en banc Federal Circuit identified § 286 as the kind of genuine limitations period that the veterans' provision at issue was not. 1 F.4th at 1070–71 (Chen, J., concurring).

"operates independently of the equitable defenses of laches and estoppel," *id.*, and that Stucki "simply waited too long to sue" because of its own "earlier strategic error." *Id.* at 365. AIT seeks no laches excuse, and it did not wait to sue Salesforce: Salesforce has been the defendant on these patents, over these products, since November 2013.[7]

**2. AIT Is Entitled to Equitable Tolling**

**a. Tolling Is Permitted After Dismissal Without Prejudice and Refiling**

A litigant is entitled to equitable tolling upon showing "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649. The Supreme Court has recognized that a timely first suit against the same defendant, dismissed on a ground that does not reach the merits, tolls the limitations period. In *Burnett*, the plaintiff timely sued under the FELA in state court, and the suit was dismissed for improper venue. The Court held that the plaintiff "did not sleep on his rights but brought an action within the statutory period," and that the defendant "could not have relied upon the policy of repose embodied in the limitation statute, for it was aware that petitioner was actively pursuing his FELA remedy." *Id.* at 429–30. The Court also held that the limitation provision "is tolled until the state court order dismissing the state action becomes final by the running of the time during which an appeal may be taken or the entry of a final judgment on appeal." *Id.* at 435; *see also Irwin*, 498 U.S. at 96 & n.3.

The Ninth Circuit has applied the same principle when the first action is dismissed for want of subject matter jurisdiction. In *Valenzuela v. Kraft, Inc.*, 801 F.2d 1170 (9th Cir. 1986), *amended*, 815 F.2d 570 (9th Cir. 1987), the plaintiff timely filed her Title VII suit in state court; the defendant removed it, and the federal court dismissed for lack of jurisdiction, a dismissal the Ninth Circuit affirmed. *Id.* at 1171. She refiled in federal court before the mandate issued. *Id.* at 1171–72. The court held the period tolled: "The purpose of the statute, the notice to defendant, and the diligence

[7] Salesforce's out-of-district cases (Mot. 10–11) add nothing. *Rolls-Royce PLC v. United Techs. Corp.*, a pre-*SCA Hygiene* in limine ruling, rested on *Standard Oil*'s premise that § 286 is not a statute of limitations, which *SCA Hygiene* rejected. No. 1:10-cv-457, 2011 WL 1740143, at *3 (E.D. Va. May 4, 2011); *see* 580 U.S. at 336–37. *Bralich v. Sullivan* repeated that statement in dicta where no party sought equitable tolling. No. 17-00547, 2018 WL 11260505, at *6–7 & n.7 (D. Haw. Apr. 10, 2018).

demonstrated by the plaintiff determine the availability of tolling, not the presence or absence of subject matter jurisdiction." *Id.* at 1175; *see also Platoro Ltd. v. Unidentified Remains of a Vessel,* 614 F.2d 1051, 1053–55 (5th Cir. 1980) (tolling where first suit was dismissed on appeal for lack of *in rem* jurisdiction); *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1186 (9th Cir. 2009) (relying on *Valenzuela* to toll during a prior action dismissed for lack of personal jurisdiction, where the plaintiff refiled the same day the appellate court affirmed that dismissal; "none of the factors used in deciding whether equitable tolling applies is affected by the fact that the [first] action was filed in a court that lacked personal jurisdiction"); *Figueroa v. BNSF Ry. Co.*, No. 4:17-CV-5096-TOR, 2018 WL 4183251, at *4 & n.2 (E.D. Wash. June 5, 2018) (tolling FELA limitations period under *Burnett* during prior state action dismissed for lack of personal jurisdiction).

Salesforce never addresses equitable tolling based on a prior action, instead calling AIT's request an attempt to "borrow" the filing date of a different action. Mot. 9. But AIT borrows nothing. Its damages period still runs back from its August 29, 2025 complaint, and tolling simply excludes the time its timely First Action was pending, as in *Burnett* and *Valenzuela*. *See Burnett*, 380 U.S. at 434–35; *Valenzuela*, 801 F.2d at 1175. Salesforce's authorities do not address tolling at all. *Anza* was a Rule 15(c) dispute, in which the patentee sought to give patents first asserted in a supplemental complaint the original complaint's filing date. 934 F.3d at 1368–73. AIT asserted these same patents against this same defendant in 2013; nothing here relates back to an unasserted claim. And *Insulet*, a trade-secret appeal, involved no request for tolling. 176 F.4th at 1352–53.

AIT's case falls squarely within the situation *Irwin* identified, and *Burnett* and *Valenzuela* illustrate, in which equitable tolling is warranted: AIT "actively pursued [its] judicial remedies by filing a defective pleading during the statutory period." *Irwin*, 498 U.S. at 96. AIT timely sued Salesforce on these patents in November 2013, and the Court dismissed the First Action without prejudice for lack of standing, a ground that did not reach the merits. FA ECF 1, 471; *see* Mot. 18 n.5. Like the plaintiff in *Valenzuela*, AIT filed this action while review of that dismissal was pending. ECF 2; FA ECF 485.

**b. The Equities of This Case Support Tolling**

The extraordinary circumstances inquiry is not governed by "mechanical rules"; the "exercise

of a court's equity powers… must be made on a case-by-case basis," with "flexibility" and an "awareness of the fact that specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case." *Holland*, 560 U.S. at 649–50. Here, the posture of the First Action, the way both parties and the Court treated the title question, and the unsettled state of the law are what stood between AIT and an earlier curative filing, not any choice by AIT.

First, throughout the pendency of the First Action and its appeal, AIT could not pursue these claims in a second suit without facing the objection Salesforce now raises. Salesforce argues that a plaintiff in AIT's position "could have waited until final judgment had been rendered in his first suit and the appeal dismissed before filing a second suit." Mot. 17 (quoting *Oliney*, 771 F.2d at 859). It also argues that AIT "could have accepted the dismissal and filed a properly constituted action. Or it could have sought review to restore its 2013 filing date." Mot. 20. In other words, according to Salesforce, AIT could not file a second action while the First Action, or review of its dismissal, remained pending. *See* Mot. 16–17 (citing *Adams*, 487 F.3d at 688). Under Salesforce's argument, any curative suit filed while the First Action remained pending from October 2022 to March 2025 would have been improper claim splitting. But in the absence of tolling, waiting for the First Action to end would have potentially run the statute of limitations under § 286. That obstacle came from the posture of the litigation, not from any choice AIT made about when to sue. It is the circumstance *Burnett* addresses by tolling through the pendency of the first suit and any appeal taken.

Second, from 2022 through 2024, Salesforce, AIT, and the Court all treated title as a *question* that could await the merits and be cured. Salesforce moved to dismiss for lack of standing the day after the parties cross-moved for summary judgment. *See supra* § II.C; FA ECF 281. Salesforce then argued summary judgment without mentioning standing and proposed an order denying its own standing motion as "moot," FA ECF 401-1 at 1, based on its belief that it was "unnecessary to reach the questions raised in the standing motion." FA ECF 474 at 5. The Court denied the standing motion as moot, without prejudice. FA ECF 408 at 2–3, 47. On appeal, Salesforce did not dispute AIT's jurisdictional statement, *see AIT I* ECF 18, despite the requirement under Fed. Cir. R. 28(b) to raise any "areas of disagreement", and instead asked the Federal Circuit to affirm the merits judgment and fee award. Whether Salesforce's silence was neglect or, as the Court suggested, "strategic," it

delayed resolution of the standing issue. Mot. 4; FA ECF 474 at 6 (Court observing that on appeal Salesforce's failure to raise Article III with the Federal Circuit was "probably for a strategic reason"). AIT does not contend that Salesforce's delay, whether through neglect or improper purpose, created jurisdiction or waived its Article III objection. *Cf.* Mot. 15. The point is that Salesforce significantly delayed the title question behind the merits by a course that it proposed, that the Court adopted, and that Salesforce followed on appeal despite its obligation to raise any jurisdictional disagreements. As such, AIT's belief that Salesforce's motion did not implicate Article III and did not preclude equitable relief, was consistent with Salesforce actions, and it cannot be faulted for contesting Article III standing. Mot. 2, 14 (criticizing AIT for contesting standing).

Third, the law governing cure of title defects was unsettled with respect to the timing of any proposed cure. Under Ninth Circuit precedent, AIT reasonably believed a real party in interest is "entitled to await" a district court's ruling before being deemed on notice for purposes of Rule 17, because a contrary rule "would pressure plaintiffs to adopt their opponents' interpretation even when convinced they did everything right." *Jones v. Las Vegas Metro. Police Dep't*, 873 F.3d 1123, 1129 & n.3 (9th Cir. 2017). Similarly, district courts had permitted the true owner to ratify or join under Rule 17(a)(3) in patent cases where the named plaintiff held no title when it sued. *See, e.g.*, *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2023 WL 7135236, at *6–7 (S.D.N.Y. Oct. 30, 2023); *Park B. Smith, Inc. v. CHF Indus. Inc.*, 811 F. Supp. 2d 766, 771–75 (S.D.N.Y. 2011); Ex. E at 29–30 (collecting cases reflecting the unsettled state of the law).[8] At the same time, the Federal Circuit was redrawing the line between statutory and Article III defects in a patentee's rights, including in a case rejecting the theory on which Salesforce principally relied for lack of standing. *Intellectual Tech LLC v. Zebra Techs. Corp.*, 101 F.4th 807 (Fed. Cir. 2024); Ex. E at 14–15. Only after dismissal did this Court and the Federal Circuit hold that there was no cure for ownership defect here. FA ECF 481 at 3–5; *AIT II*, 2026 WL 731122, at *3, *5. A litigant "should not be denied a chance to present [its] case because [it] chose the wrong line of precedent." *Valenzuela*, 801 F.2d at 1175; *see Landmark Screens, LLC v. Morgan, Lewis, & Bockius, LLP*, 676 F.3d 1354, 1363 (Fed. Cir. 2012) (tolling

[8] During the appeal, Salesforce acknowledged that the Second Circuit has held joinder under Rule 17 able to satisfy Article III. *AIT II* ECF 21 at 49 n.14.

limitations after the first action was dismissed for lack of subject matter jurisdiction, because "there was ambiguity as to whether the suit belonged in state or federal court"); *Figueroa*, 2018 WL 4183251, at *4 ("[T]he lack of clarity in the law creates an extraordinary circumstance.").

These circumstances, not any lapse by AIT, caused the loss of damages that tolling would restore either in whole, or part. A cure within the First Action would not have helped: this Court held that the defect went to standing at the inception of suit and could not be corrected by later ratification or assignment, FA ECF 481 at 3–5, so a 2022 quitclaim would have produced the same dismissal. The only step that could have preserved an earlier § 286 date was a second suit, which, on Salesforce's own account, AIT could not maintain while the First Action was pending.

The authority on which Salesforce relies is unavailing. In *Menominee Indian Tribe of Wisconsin v. U.S.*, the plaintiff Tribe declined to file its own claims in the mistaken belief that a putative class action brought by others preserved them, a "simple 'miscalculation'" that was neither extraordinary nor beyond its control. 577 U.S. 250, 256–58 (2016). AIT did the opposite: it sued timely, prosecuted its own claims against this defendant, and lost on a previously unresolved legal question. *See Figueroa*, 2018 WL 4183251, at *4. Further, the delays caused by the stays over AIT's objections and Salesforce's silence in the face of AIT's jurisdictional statement on appeal were beyond AIT's control. *Lans v. Digital Equipment Corp.*, 252 F.3d 1320 (Fed. Cir. 2001) is no closer. There, the inventor held himself out as the patent owner and dishonestly concealed his assignment, *id.* at 1325, and the court upheld the denial of leave to amend because his allegations were "not honest and understandable mistakes" and his "personal choices occasioned his standing problems." *Id.* at 1328. AIT, by contrast, sued under a recorded assignment with Ms. Nelson's consent and disclosed her interest from the outset, and there was no dishonesty. Ex. B ¶¶ 15, 24; Ex. C at 1; FA ECF 9; DeVincenzo Decl. ¶¶ 4–7. And *Stucki*'s "predicament stem[med]" from its own strategic choice to abandon joinder and wait to sue. 963 F.2d at 364. AIT made no comparable choice.

**c. AIT Pursued Its Rights Diligently**

The diligence required for equitable tolling is "reasonable diligence," not "maximum feasible diligence." *Holland*, 560 U.S. at 653. It "does not require an overzealous or extreme pursuit of any and every avenue of relief," only "the effort that a reasonable person might be expected to deliver."

*Doe v. Busby*, 661 F.3d 1001, 1015 (9th Cir. 2011). AIT meets the reasonable diligence standard throughout: while it prosecuted the First Action, including after Salesforce raised the title question in 2022, and after that action was dismissed.

*While the First Action was pending.* AIT sued Salesforce on November 8, 2013, and pressed these claims continuously. FA ECF 1. AIT did not wait out the nearly five-year stay Salesforce obtained over its opposition. *See supra* § II.A. It moved twice to lift the stay, FA ECF 105, 130, and, when the remand had been pending for 21 months, petitioned the Federal Circuit for mandamus, leading to a Patent Office decision within weeks. *In re Applications in Internet Time, LLC*, No. 2020-143 (Fed. Cir. 2020); FA ECF 130 at 3–4. The Agreements were produced just five months after claim construction, and an earlier production would not have hastened Salesforce's standing challenge, which required it to complete fact depositions and expert discovery. *See supra* §§ II.B–C.

*After Salesforce raised title in October 2022.* Salesforce's diligence argument reduces to the contention that AIT should have cured its title in 2022 rather than contesting Salesforce's motion. Mot. 14. AIT's response was reasonable. AIT held the recorded 2012 Assignment, executed with Ms. Nelson's knowledge and approval, and believed it held title. Ex. B ¶¶ 14–15, 22–24; Ex. D ¶¶ 15–18; Ex. C at 1. Defending a non-frivolous position on title, rather than conceding it, was reasonable. *See Jones*, 873 F.3d at 1129 n.3.[9] Moreover, Salesforce's motion pressed two inconsistent theories, and its "primary argument" placed title not in Ms. Nelson but in LFRT, a defunct entity, which a quitclaim from Ms. Nelson would not have answered. FA ECF 471 at 4 n.5; *see* FA ECF 290 at 11–15. The standing question was then deferred at Salesforce's proposal, *see supra* § II.C, while AIT successfully appealed the merits judgment and fee award on an expedited basis. *AIT I* ECF 25. That is not the conduct of a litigant sleeping on its rights.

*After the dismissal.* Once the Court ruled on Salesforce's "alternative argument" concerning Ms. Nelson, FA ECF 471 at 4 n.5, AIT acted: it obtained Ms. Nelson's quitclaim and ratification, sought relief in the First Action, asked Salesforce to agree to toll damages (which would have made this action unnecessary), noticed its appeal, and filed this action fifteen days after noticing its appeal.

[9] The Court's later conclusion that AIT's Rule 17 arguments did not warrant reconsideration, FA ECF 481 at 3, did not address diligence for purposes of tolling.

*See supra* § II.C; FA ECF 476; Exs. B, C; DeVincenzo Decl. ¶¶ 8–9; ECF 27 at 4. That timing compares favorably with the cases recognizing this form of tolling. *See Valenzuela*, 801 F.2d at 1171–72 (refiling after affirmance, before mandate); *Hatfield*, 564 F.3d at 1185 (refiling the day the appellate court affirmed dismissal). Salesforce's contrary authorities concern a different question. *Pa. Pub. Sch. Emp' Ret. Sys. v. Morgan Stanley & Co.*, 814 F.3d 641, 643 (2d Cir. 2016), and *Valtrus*, 839 F. Supp. 3d at 865, addressed the timeliness of Rule 17 relief or claim splitting within or alongside the first action, not whether a timely first suit against the same defendant tolls the limitations period for a cured, refiled action. Mot. 14–15.

**d. Salesforce's Remaining Objections Do Not Defeat Tolling**

Salesforce raises several further objections, each of which lacks merit. First, Salesforce argues that because the First Action was dismissed for lack of standing, tolling is unavailable. Cf. Mot. 12–13 (relying on *Humphreys v. United States*, 272 F.2d 411 (9th Cir. 1959)). *Humphreys* "merely held that a plaintiff could not resuscitate an action voluntarily dismissed after the statute of limitations period had run," *E. & J. Gallo Winery v. Proximo Spirits, Inc.*, 583 F. App'x 632, 635 (9th Cir. 2014), and it did not address or consider equitable tolling. And *Valenzuela* applied tolling despite a dismissal for lack of subject matter jurisdiction. 801 F.2d at 1175; *see supra* § III.B.2.a. *Holt v. County of Orange* (Mot. 19) applied *Humphreys* only to statutory tolling under 28 U.S.C. § 1367(d) after a voluntary dismissal. The court separately addressed and rejected equitable tolling, not because it was unavailable as a matter of law, but because the plaintiffs had not pursued their claims in good faith. 91 F.4th 1013, 1020–22 (9th Cir. 2024). Indeed, its statement that "[t]he proper remedy is appeal" addressed a plaintiff who let the time to appeal lapse, *id.* at 1021; AIT appealed.

Second, Salesforce argues that equitable tolling cannot extend to claims that belonged to Ms. Nelson. Mot. 12–13. *Lans*, on which Salesforce relies, did not involve tolling or § 286. It applied § 287(a)'s marking provision, which requires notice of infringement from the patentee itself, 252 F.3d at 1327; § 287(a) has no application here because there were no patented products to mark. And unlike the inventor in *Lans*, AIT concealed nothing and was not dishonest. *See supra* § III.B.2.b;

DeVincenzo Decl. ¶¶ 4–7. Further, equitable tolling is flexible, not formulaic like § 287(a),[10] and asks something different: whether the plaintiff pursued claims diligently and whether the defendant knew they were being pressed. *See Burnett*, 380 U.S. at 429–30; *Valenzuela*, 801 F.2d at 1175. Like the defendant in *Burnett*, Salesforce "could not have relied upon the policy of repose." 380 U.S. at 430. It has litigated these claims since 2013 and has known since then that Ms. Nelson had an interest in the outcome. FA ECF 9; FA ECF 283-2 at 10, 12.

Third, contrary to Salesforce's argument, tolling would not grant relief "the courts in the First Action have already denied." Mot. 12–13 & n.3. This court held only that Rule 17 equitable relief could not supply Article III standing within the First Action. FA ECF 481 at 3–5; *AIT II*, 2026 WL 731122, at *3, *5. Neither addressed whether § 286 may be tolled in a new action. Issue preclusion requires an identical issue actually decided. *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 148 (2015). Moreover, those rulings rested on Article III, which left no room to weigh the equities; as Salesforce itself argued, "[c]onstitutional standing requirements cannot be relaxed for equitable reasons." *AIT II* ECF 21 at 49; *see* FA ECF 481 at 3–5. The Court recognized that the result could have "dire consequences" for AIT, FA ECF 481 at 4, but held that it could not consider them.

Accordingly, based on its prior action, the limitations period should be tolled from November 8, 2013, through the filing of this action. *Burnett*, 380 U.S. at 435; *Hatfield*, 564 F.3d at 1185. In any event, the Court need not fix the precise period now. While Salesforce asks the Court to hold that no tolling is available and to dismiss the '111 patent claims "in their entirety," Mot. 8, tolling of even eight months would preserve those claims. Further, equity does not demand all-or-nothing relief. Courts determine the appropriate period of tolling based on what is "fairest to both parties" and often toll discrete periods during which a plaintiff was kept from advancing its claims due to no fault of its own. *Larocque v. City of Los Angeles*, 760 F. Supp. 3d 1007, 1015 (C.D. Cal. 2024) (tolling from the date the court imposed a nearly year-long stay rather than the earlier date plaintiff sought); *see*

---

[10] Even under the strict contours of § 287(a), the Federal Circuit has declined to apply *Lans* where its purposes were served because the accused infringer knew whom to contact "about an amicable and early resolution of the potential dispute," precisely the type of notice Salesforce received about Ms. Nelson's interest. *U.S. Philips Corp. v. Iwasaki Elec. Co.*, 505 F.3d 1371, 1375 (Fed. Cir. 2007) (quoting *Lans*, 252 F.3d at 1327) (notice from the patent owner's affiliate's action sufficed).

*O'Donnell v. Vencor Inc.*, 466 F.3d 1104, 1112–13 (9th Cir. 2006) (tolling during stay triggered by defendants' bankruptcy, which "prevented the claimant from taking steps to protect her claim," because defendants "created the situation"); *cf. Rittmann v. Amazon, Inc.*, No. C16-1554, 2024 WL 4932745, at *5–6 (W.D. Wash. Dec. 2, 2024) (tolling where proceedings were "stayed at Defendants' request"). For example, at a minimum, Salesforce should not benefit from the 1,722 days from June 14, 2016 to March 2, 2021, when the First Action was stayed over AIT's objection; or from the 557 days between Salesforce's July 10, 2023 proposal that its standing motion be denied as moot, FA ECF 401-1, and its January 17, 2025 request that the motion be reinstated, FA ECF 458 at 6. *Cf. Marti v. Iberostar Hoteles y Apartamentos S.L.*, No. 20-20078, 2023 WL 4532198, at *2 (S.D. Fla. July 13, 2023) (tolling where defendant "sought" the stay and delay was "of [its] own making"). Absent the stay and/or Salesforce's request to deny its standing motion as moot and failure to raise it on appeal, Salesforce's standing challenge, and AIT's cure and refiling each would have occurred earlier; the stay alone cost AIT five years of its damages period. Any period alone preserves the '111 patent claims.

**3. Whether Tolling Applies Cannot Be Resolved Against AIT on the Pleadings**

**The factual disputes preclude dismissal.** Salesforce concedes that a limitations defense warrants dismissal only where the complaint's allegations would not permit the plaintiff to prove equitable tolling. *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1045 (9th Cir. 2011); Mot. 9. Because the applicability of equitable tolling "often depends on matters outside the pleadings," it "is not generally amenable to resolution on a Rule 12(b)(6) motion." *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995). The Complaint pleads what *Burnett* and *Valenzuela* make dispositive: a timely 2013 suit against the same defendant on the same patents, a dismissal that did not reach the merits, and refiling within weeks of final disposition. ECF 2 ¶ 2. It alleges that the standing question was deferred at Salesforce's proposal and not raised on appeal, *id.* ¶¶ 25, 30, and describes events the docket confirms; they are not legal conclusions. *Cf.* Mot. 14.

Salesforce's contrary account rests on contested assertions: that AIT withheld the Agreements for eight years, that AIT "created" the standing defect, and that Ms. Nelson could have sued "at any time." Mot. 3–4, 14, 23. Each is a disputed question of fact. The last assertion ignores that Ms. Nelson has sworn that she approved AIT's assertion of the patents, consistent with her intent. Ex. B ¶¶ 15, 24.

Whether she could have repudiated that arrangement and sued in her own name, after AIT enforced the patents at its expense for a decade, would turn on fact-bound equitable defenses such as estoppel and laches. *See Welk Biology Co. Ltd. v. Hakumo LLC*, No. 2:24-cv-01613-APG-NJK, 2025 WL 2421232, at *13 (D. Nev. Aug. 20, 2025) (justifiable reliance "is a fact question not suitable for resolution at the dismissal stage"); *Carson City v. Price*, 113 Nev. 409, 412, 934 P.2d 1042 (1997) (laches requires delay and "depends upon the particular facts of each case"); *cf. Kennedy v. Basil*, 531 F. Supp. 3d 828, 838–40 (S.D.N.Y. 2021) (LLC's 50% owner and managing member estopped from claiming personal ownership of marks she had represented belonged to the LLC). Salesforce asks the Court to take notice of "what was filed and decided," Mot. 7 n.2, but such notice does not reach disputed facts recited in those filings. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999–1001 (9th Cir. 2018).

**Alternatively, the summary-judgment standard applies.** If the Court considers Salesforce's characterizations, the § 286 portion of the motion becomes one for summary judgment, and AIT must be given "a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). AIT's evidence is to be believed with all justifiable inferences drawn in its favor, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), and that evidence at a minimum creates genuine disputes on diligence and extraordinary circumstances. *See supra* § III.B.2; DeVincenzo Decl. ¶¶ 3–10, Ex. B; Ex. C; Ex. D ¶¶ 15–18.

**At a minimum, AIT should be granted leave to amend.** Leave to amend is to be "freely give[n]…when justice so requires." Fed. R. Civ. P. 15(a)(2). The proposed First Amended Complaint, Ex. G, adds allegations supporting diligence and the circumstances warranting tolling, and would not be futile. *See Cervantes*, 656 F.3d at 1041; *see Bank of N.Y. v. Foothills at MacDonald Ranch Master Ass'n*, 329 F. Supp. 3d 1221, 1230, 1235 (D. Nev. 2018) (dismissing without prejudice to amend "to add facts that would make plausible the potential for waiver, estoppel, or equitable tolling").

## IV. CONCLUSION

AIT respectfully requests that the Court deny the Motion or, alternatively, (1) stay this action until the AIT's appeal of the first action is concluded; and (2) if the Court finds the tolling allegations insufficient, grant leave to file the proposed First Amended Complaint (Ex. G).

Dated: November 24, 2026

_/s/ Michael DeVincenzo_

SBW LAW GROUP
Michael A. Burke, Esq.
3600 Mayberry Dr.
Reno, NV 89509

HECHT PARTNERS LLP
Michael DeVincenzo, Esq. (*pro hac vice*)
125 Park Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 851-6821

*Attorneys for Plaintiff*
*Applications in Internet Time, LLC*

## CERTIFICATE OF SERVICE

The undersigned certifies that on November 24, 2026 I caused the foregoing **PLAINTIFF APPLICATIONS IN INTERNET TIME, LLC'S OPPOSITION TO DEFENDANT SALESFORCE, INC.'S MOTION TO DISMISS THE COMPLAINT** to be filed with the Clerk of the Court by using the CM/ECF system which will send a Notice of Electronic Filing to the following counsel of record:

Leigh T. Goddard
lgoddard@mcdonaldcarano.com

John J. Frankovich
jfrankovich@mcdonaldcarano.com

Kevin P.B. Johnson
kevinjohnson@quinnemanuel.com

Ray R. Zado
rayzado@quinnemanuel.com

Sam S. Stake
samstake@quinnemanuel.com

*Attorneys for Defendant Salesforce, Inc.*

Dated: November 24, 2026

*/s/ Michael DeVincenzo*
Michael DeVincenzo