# Exhibit E

No. ______

In The
# Supreme Court of the United States

---

Applications In Internet Time, LLC,

*Petitioner,*

v.

Salesforce, Inc.,

*Respondent.*

---

**On Petition for a Writ of Certiorari to the United States Court of Appeals for the Federal Circuit**

---

## PETITION FOR A WRIT OF CERTIORARI

---

Steven C. Sereboff
Socal IP Law Group LLP
310 N. Westlake Blvd., Suite 120
Westlake Village, California 91362
805-230-1356

Charles Wizenfeld
*Counsel of Record*
Michael S. DeVincenzo
Andrea Pacelli
Hecht Partners LLP
125 Park Avenue, 25th Floor
New York, NY 10017
212-851-6821
cwizenfeld@hechtpartners.com

*Counsel for Petitioner*

November 9, 2026

## QUESTION PRESENTED

Under 35 U.S.C. § 281, only a "patentee" may sue for patent infringement, and this Court has held that whether a particular plaintiff qualifies to invoke a federal cause of action is ordinarily a question of statutory interpretation, not a component of Article III standing. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 & n.4 (2014). Here, the Federal Circuit held that petitioner lacked Article III standing because it did not hold an exclusionary right in the asserted patents when it filed suit. On that basis the court of appeals held the defect could not be cured through Rule 17(a)(3) ratification or contract reformation.

The question presented is:

Whether a patent plaintiff's lack of an exclusionary right in the asserted patents is a defect in Article III standing that bars Rule 17(a)(3) ratification and contract reformation, or instead a question of statutory entitlement to sue that those mechanisms may address.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to this Court's Rule 29.6, petitioner Applications in Internet Time, LLC states that it has no parent corporation and no publicly held company owns 10% or more of its stock.

## PARTIES TO THE PROCEEDING

Petitioner Applications in Internet Time, LLC was the plaintiff in the district court and the appellant in the court of appeals.

Respondent Salesforce, Inc. was the defendant in the district court and the appellee in the court of appeals.

Petitioner has no stock ticker symbol. Respondent's stock ticker symbol is CRM, and its common stock trades on the New York Stock Exchange.

## RELATED PROCEEDINGS

The following proceedings are directly related to this case within the meaning of this Court's Rule 14.1(b)(iii):

*Applications in Internet Time, LLC v. Salesforce, Inc.*, Case No. 3:13-cv-00628 (D. Nev.), action dismissed March 28, 2025; judgment entered March 31, 2025, and vacated July 21, 2025, to permit disposition of respondent's counterclaims; order granting stipulated dismissal of counterclaims entered August 5, 2025; judgment on costs entered May 18, 2026.

*Applications in Internet Time, LLC v. Salesforce, Inc.*, Case Nos. 2024-1133, 2024-1685 (Fed. Cir.), judgment entered on October 10, 2024.

*Applications in Internet Time, LLC v. Salesforce, Inc.*, Case No. 2025-2026 (Fed. Cir.), judgment entered on March 16, 2026.

**TABLE OF CONTENTS**

QUESTION PRESENTED .......... i

CORPORATE DISCLOSURE STATEMENT .......... ii

RELATED PROCEEDINGS .......... iii

TABLE OF CONTENTS .......... iv

TABLE OF AUTHORITIES .......... vi

PETITION FOR A WRIT OF CERTIORARI .......... 1

OPINIONS BELOW .......... 1

JURISDICTION .......... 1

CONSTITUTIONAL AND STATUTORY PROVISIONS INVOLVED .......... 3

PRELIMINARY STATEMENT .......... 4

STATEMENT OF THE CASE .......... 7

A. Constitutional and Statutory Framework .......... 7

B. The Chain of Title of the Asserted Patents .......... 7

C. Proceedings Below .......... 9

REASONS FOR GRANTING THE PETITION .......... 11

I. The Decision Below Conflicts with This Court's Repeated Instruction that Article III Standing Must Remain Distinct from Statutory Entitlement to Sue .......... 11

II. The Decision Below Creates a Patent-Specific Constitutional Standing Rule Unknown to This Court's Article III Jurisprudence .......... 18

III. The Decision Below Presents a Question the Federal Circuit Has Long Avoided...22

IV. The Decision Below Disrupts the Ordinary Operation of the Federal Rules by Constitutionalizing a Statutory Ownership Question ....................................................27

V. The Decision Below Presents an Ideal Vehicle for Resolving the Question Presented..................................................31

CONCLUSION..............................................................33

APPENDIX

APPENDIX A – Opinion of the United States Court of Appeals for the Federal Circuit, *Applications in Internet Time, LLC v. Salesforce, Inc.*, No. 2025-2026 (Mar. 16, 2026) .............................................1a

APPENDIX B – Order of the United States District Court for the District of Nevada Granting Motion to Dismiss, No. 3:13-cv-00628-MMD-CLB (Mar. 28, 2025)...............................................................15a

APPENDIX C – Order of the United States District Court for the District of Nevada Denying Motion for Reconsideration, No. 3:13-cv-00628-MMD-CLB (July 21, 2025) ............................................28a

APPENDIX D – Order of the United States Court of Appeals for the Federal Circuit Denying Petition for Panel Rehearing and Rehearing En Banc, No. 2025-2026 (June 12, 2026)...................................37a

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.L.M. Holding Co. v. Zydex Industries Private Ltd.*,
176 F.4th 1326 (Fed. Cir. 2026) ....................................25

*Arbaugh v. Y & H Corp.*,
546 U.S. 500 (2006) ....................................12, 13

*CPI Card Group, Inc. v. Multi Packaging Solutions, Inc.*,
No. 16-cv-02536-MEH, 2018 WL 3429197
(D. Colo. July 16, 2018) ....................................29

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
528 U.S. 167 (2000) ....................................18

*Genetics Inst., LLC v. Novartis Vaccines and Diagnostics, Inc.*,
655 F.3d 1291 (Fed. Cir. 2011) ....................................20

*Hutto v. Davis*,
454 U.S. 370 (1982) ....................................12

*In re Cirba Inc.*,
No. 2021-154, 2021 WL 4302979
(Fed. Cir. Sept. 22, 2021) ....................................23

*Intellectual Tech LLC v. Zebra Technologies Corp.*,
101 F.4th 807 (Fed. Cir. 2024) ....................................15

*Jones v. Las Vegas Metro. Police Dep't*,
873 F.3d 1123 (9th Cir. 2017) ................................10, 32

*Kimble v. Marvel Entertainment, LLC*,
576 U.S. 446 (2015).......................................................20

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014).........4, 5, 7, 11, 13-16, 18-20, 23, 28

*Lone Star Silicon Innovations LLC v. Nanya Technology Corp.*,
925 F.3d 1225 (Fed. Cir. 2019)...... 14, 16, 17, 21, 23, 28

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)...................................................7, 19

*Middleton, Inc. v. Minn. Mining & Mfg. Co.*,
No. 4:03-CV-40493-MWB-TJS, 2012 WL 12860706 (S.D. Iowa Mar. 6, 2012).............................................30

*Omni MedSci, Inc. v. Apple Inc.*,
7 F.4th 1148 (Fed. Cir. 2021) ............................... 22, 23

*Park B. Smith, Inc. v. CHF Indus. Inc.*,
811 F. Supp. 2d 766 (S.D.N.Y. 2011)....................29, 30

*Reed Elsevier, Inc. v. Muchnick*,
559 U.S. 154 (2010).......................................................13

*Rite-Hite Corp. v. Kelley Co., Inc.*,
56 F.3d 1538 (Fed. Cir. 1995).....................................19

*SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*,
580 U.S. 328 (2017).......................................................20

*Schwendimann v. Arkwright Advanced Coating, Inc.*,
959 F.3d 1065 (Fed. Cir. 2020)...... 14, 15, 23, 24, 28, 29

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016).................................................4, 19

*Spectrum Dynamics Medical Ltd. v. General Electric Co.*,
No. 18-CV-11386, 2023 WL 7135236
(S.D.N.Y. Oct. 30, 2023)..............................................30

*Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*,
554 U.S. 269 (2008).......................................................18

*Steel Co. v. Citizens for a Better Environment*,
523 U.S. 83 (1998).........................................................12

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021).......................................................16

*Uniloc USA, Inc. v. Motorola Mobility LLC*,
52 F.4th 1340 (Fed. Cir. 2022) ....................................24

*Verizon Md. Inc. v. Public Serv. Comm'n of Md.*,
535 U.S. 635 (2002).......................................................13

*WiAV Sols. LLC v. Motorola, Inc.*,
631 F.3d 1257 (Fed. Cir. 2010)................................7, 19

*Zebra Technologies Corp. v. Intellectual Tech LLC*,
No. 24-114, 145 S. Ct. 568 (2024) ................................15

**Constitutional Provisions & Statutes**

U.S. Const. art. III, § 2.......................................................3

28 U.S.C. § 1254(1) .......... 2

28 U.S.C. § 1295(a)(1) .......... 32

35 U.S.C. § 100(d) .......... 7

35 U.S.C. § 281 .......... 5, 7, 14, 20, 29

35 U.S.C. § 286 .......... 20, 32

**Rules**

Fed. R. Civ. P. 17 .......... 5, 9, 10-11, 28-32

Fed. R. Civ. P. 17, Advisory Committee Notes to the 1966 Amendments .......... 28

## PETITION FOR A WRIT OF CERTIORARI

Petitioner Applications in Internet Time, LLC ("AIT") respectfully submits this petition for a writ of certiorari to review the judgment of the U.S. Court of Appeals for the Federal Circuit.

## OPINIONS BELOW

The court of appeals' opinion in *Applications in Internet Time, LLC v. Salesforce, Inc.*, Case No. 2025-2026 (App. 1a–14a) is not published in the Federal Reporter but is reprinted at 2026 WL 731122 (Fed. Cir. Mar. 16, 2026). The court of appeals' order denying panel rehearing and rehearing *en banc* is unreported but is reproduced at App. 37a–38a. The opinion of the district court granting Salesforce, Inc.'s ("Salesforce") motion to dismiss petitioner's complaint is unreported but is available at 2025 WL 961656 (App. 15a–27a). The opinion of the district court denying petitioner's motion for reconsideration of that dismissal is unreported but is available at 2025 WL 2029841 (App. 28a–36a).

## JURISDICTION

The court of appeals entered judgment on March 16, 2026. Petitioner timely filed a petition for panel rehearing and rehearing *en banc*, which the court denied on June 12, 2026. Petitioner timely filed an application to extend the time within which to file this petition, which the Chief Justice, as Circuit Justice for the United States Court of Appeals for the Federal Circuit, granted on August 21, 2026, extending the deadline to and including November 9, 2026. No. 26A234. The

jurisdiction of this Court is invoked under 28 U.S.C. § 1254(1).

## CONSTITUTIONAL AND STATUTORY PROVISIONS INVOLVED

Section 2 of Article III of the United States Constitution provides, in relevant part: "The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority[.]"

Section 281 of Title 35 of the U.S. Code provides: "A patentee shall have remedy by civil action for infringement of his patent."

## PRELIMINARY STATEMENT

The Federal Circuit ended more than a decade of patent litigation on the ground that AIT lacked Article III standing. The court did not hold that AIT failed to allege an economic injury of the kind Article III recognizes under this Court's decisions. It held instead that AIT lacked "exclusionary patent rights," App. 8a, an element found nowhere in this Court's Article III jurisprudence.

Article III requires an injury in fact, fairly traceable to the defendant's conduct, that a favorable decision is likely to redress. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Whether a plaintiff falls within the class of persons a statute authorizes to sue is a question of statutory interpretation, not of judicial power under Article III. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 & n.4 (2014). Thus, a plaintiff alleging economic harm such as lost sales has Article III standing, *see id.* at 125, and whether it has a cause of action under the statute it invokes poses a separate, non-constitutional question. *Id.* at 128 & n.4.

AIT, the owner of record of two patents, sued Salesforce for patent infringement in 2013. AIT relied on a recorded 2012 assignment from Alternative Systems, Inc. ("ASI"), a company owned and controlled by the same two individuals who owned and controlled AIT: Beverly Nelson and Douglas Sturgeon. The district court held that a 2006 agreement had transferred the patents to Nelson personally, so that ASI had nothing to assign. App. 26a. It did so notwithstanding Nelson's intent that AIT own the patents. Decl. of Beverly G. Nelson ¶¶ 14–15, 20, *Applications in Internet Time, LLC v. Salesforce, Inc.*, No. 3:13-cv-00628 (D. Nev. Apr.

25, 2025) ("Nelson Decl."), C.A. App. 4624–4625 (joint appendix filed in the Federal Circuit). The Federal Circuit affirmed, holding that AIT "lacked constitutional standing" because it "had no exclusionary patent rights at the inception of the lawsuit." App. 8a. Based on that holding, it further held that neither Rule 17(a)(3) ratification nor contract reformation could cure the defect. App. 13a–14a.

AIT does not ask this Court to revisit how the agreements were interpreted. The question now is what follows from that interpretation. Under *Lexmark*'s reasoning, whether AIT held sufficient rights to sue as the "patentee" under 35 U.S.C. § 281 should be a statutory question, not an Article III issue. The difference matters because a defect in a plaintiff's statutory right to sue may be cured, but a defect in a court's constitutional power cannot. Had the courts below treated the question as statutory, Rule 17(a)(3) would have been available to permit Nelson's ratification, after which "the action proceeds as if it had been originally commenced by the real party in interest." Fed. R. Civ. P. 17(a)(3). By treating the issue as jurisdictional, the Federal Circuit turned a curable defect into a fatal one. Its reasoning could be used by any court to do the same with other statutory prerequisites to suit.

The question will not resolve itself. The Federal Circuit has avoided reconciling its exclusionary-rights rule with *Lexmark* in case after case. *See infra* Section III. Because patent appeals lie exclusively within that court's jurisdiction, a circuit split is unlikely to develop to force the issue, and lower courts disagree about whether Rule 17 and equitable relief remain available to

cure ownership defects. This Court's review is needed to restore clarity.

This case is an ideal vehicle. The Federal Circuit squarely held that an assignment defect deprived AIT of Article III standing, and relied on that holding in denying ratification and reformation. The question presented was raised, briefed, and decided below, and the Federal Circuit called for a response before denying rehearing en banc.

This Court should grant the petition.

## STATEMENT OF THE CASE

### A. Constitutional and Statutory Framework

Article III limits the federal judicial power to genuine "Cases" and "Controversies," requiring a plaintiff to demonstrate an injury in fact that is fairly traceable to the defendant's conduct and likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). A separate body of law governs whether a plaintiff is authorized to invoke a particular federal cause of action; that inquiry ordinarily concerns statutory interpretation, not constitutional power. *Lexmark*, 572 U.S. at 128 & n.4.

Under the Patent Act, a "patentee" has a civil remedy for infringement. 35 U.S.C. § 281. Congress has defined "patentee" to include not only the patentee to whom the patent issued but also "successors in title to the patentee." 35 U.S.C. § 100(d). The Federal Circuit has additionally held that a patent plaintiff must demonstrate an "exclusionary right" in the patent to satisfy Article III. *WiAV Sols. LLC v. Motorola, Inc.*, 631 F.3d 1257, 1265 (Fed. Cir. 2010). This petition challenges the Federal Circuit's treatment of that requirement as a constitutional, rather than statutory, prerequisite to suit.

### B. The Chain of Title of the Asserted Patents

U.S. Patent Nos. 7,356,482 and 8,484,111 (the "Asserted Patents"), trace to a patent application filed in 1998 by Alternative Systems, Inc. ("ASI"), a company co-founded by Beverly Nelson and Douglas Sturgeon. App. 3a. In September 2012, ASI executed an assignment of the Asserted Patents to AIT, a company also owned and controlled by Nelson and Sturgeon. App.

4a; App. 16a–17a. Like the assignments from the inventors to ASI, that assignment was recorded with the U.S. Patent and Trademark Office ("USPTO"). C.A. App. 4554–4566; App. 11a–12a. In November 2013, AIT sued Salesforce for infringing the Asserted Patents. App. 4a; *see* Compl., *Applications in Internet Time, LLC v. Salesforce.com, Inc.*, No. 3:13-cv-00628 (D. Nev. Nov. 8, 2013), ECF No. 1 ("2013 Compl.").

The dispute over AIT's title arises from a 2006 agreement ("2006 Agreement") in which ASI, Nelson, and other parties to a preexisting joint venture "sold" to Nelson a 2002 agreement terminating the venture. App. 3a. The 2006 Agreement recited that "all right, title, interest, and liability" set forth in the 2002 agreement "shall transfer in whole to Nelson." App. 3a; App. 21a.

No assignment of the patents to Nelson was recorded with the USPTO in connection with the 2006 Agreement. App. 23a (n.7). As Nelson explained, she did not intend the 2006 Agreement to assign any patent rights to her individually and intended that the rights to the Asserted Patents remain with ASI. Nelson Decl. ¶¶ 12–13, C.A. App. 4623; *see also* Quitclaim Assignment from Beverly G. Nelson to Applications in Internet Time, LLC (Apr. 25, 2025), *Applications in Internet Time, LLC v. Salesforce, Inc.*, No. 3:13-cv-00628 (D. Nev.) ("Quitclaim"), C.A. App. 4655. Nelson further explained that, in 2011, she and Sturgeon had agreed that ASI would assign the patents to their other company AIT, so that AIT could pursue Salesforce for infringement. Nelson Decl. ¶ 14, C.A. App. 4624. Sturgeon executed the September 2012 assignment on ASI's behalf. App. 4a; App. 17a. Nelson testified that the assignment was made with her knowledge and approval. Nelson Decl. ¶¶15–17, 21, 23, C.A. App. 4624–4626; *see*

*also* Quitclaim, C.A. App. 4655; Decl. of Douglas H. Sturgeon ¶¶ 17–18, *Applications in Internet Time, LLC v. Salesforce, Inc.*, No. 3:13-cv-00628 (D. Nev. Oct. 28, 2022), C.A. App. 4572.

### C. Proceedings Below

After AIT filed its complaint in 2013, the suit proceeded for over a decade, including numerous rounds of USPTO proceedings and appeals to the Federal Circuit. In October 2024, the Federal Circuit vacated a grant of summary judgment and remanded for further proceedings. App. 4a. On remand, Salesforce renewed a previously filed motion to dismiss for lack of standing, arguing that the 2006 Agreement had extinguished any rights ASI held to convey in 2012. *Id.* The district court granted Salesforce's motion in March 2025, holding that the 2006 Agreement transferred all patent rights to Nelson and that the 2012 assignment from ASI to AIT was therefore ineffective. App. 26a.

AIT then pursued two courses of action. First, in April 2025, Nelson, a member of AIT, ratified the litigation under Rule 17(a)(3), declaring that she "authorized AIT's actions in this litigation" and "authorize[d] AIT to continue this action and agree[d] to be bound by [the] lawsuit's results." Nelson Decl. ¶ 24, C.A. App. 4626. AIT then moved for reconsideration on that basis as well as based on a request to reform the 2006 Agreement under California Civil Code § 3399 to reflect the parties' actual intent. App. 29a–30a; App. 12a–13a. Second, Nelson executed a quitclaim of any patent rights she may still hold to AIT, reciting that she wished "to ensure that AIT has all such rights as was [her] intent since the execution of [the 2012] assignment." Quitclaim, C.A. App. 4655.

The district court denied the motion for reconsideration in July 2025. It held that AIT's request was untimely because the arguments could have been raised earlier and that in any event neither Rule 17(a)(3) nor contract reformation could cure what it characterized as a defect in Article III standing existing at the time suit was filed. App. 31a–34a.

In August 2025, AIT noticed an appeal to the Federal Circuit and also filed a second infringement lawsuit asserting the same patents before the same court, relying on the April 2025 quitclaim. AIT's complaint in that action states that it was brought to "preserv[e] AIT's right to past damages in view of the applicable statute of limitations during pendency of the appeal." Compl. ¶ 3, *Applications in Internet Time, LLC v. Salesforce, Inc.*, No. 3:25-cv-00476 (D. Nev. Aug. 29, 2025), ECF No. 2 ("2025 Compl."). In its appeal, AIT argued the district court erred in determining that AIT lacked constitutional standing and in holding that corrective equitable relief was unavailable. App. 6a.

With respect to equitable relief, AIT argued that the district court's timeliness ruling could not be reconciled with Ninth Circuit authority holding that a plaintiff is entitled to await a district court's ruling on a dispute over its real-party-in-interest status before being charged with notice under Rule 17(a)(3). Pet. C.A. Br. 41–43 (citing *Jones v. Las Vegas Metro. Police Dep't*, 873 F.3d 1123, 1129 n.3 (9th Cir. 2017)).

In March 2026, a three-judge panel of the Federal Circuit affirmed the district court's dismissal. On the standing question, the panel held that the 2006 Agreement unambiguously transferred all patent rights to Nelson, and therefore that AIT "had no exclusionary patent rights at the inception of the lawsuit," and

"lacked constitutional standing to sue under them." App. 8a. The panel did not address AIT's argument on the timeliness of the request for equitable relief. Instead, it affirmed the denial of both Rule 17(a)(3) ratification and reformation solely on the ground that AIT had "cited no cases under our precedent, nor have we found any, that indicate that a party can cure a lack of constitutional standing pursuant to Rule 17(a)(3) ratification or contract reformation." App. 13a–14a.

AIT petitioned for panel rehearing and rehearing *en banc*, arguing that the Federal Circuit's decision conflicted with this Court's decision in *Lexmark* and departed from the Federal Circuit's own precedent applying *Lexmark*. C.A. Reh'g Pet. at 2–4, 9–10. The Federal Circuit requested and received a response from Salesforce and denied rehearing, thus leaving the panel's constitutional holding undisturbed.

## REASONS FOR GRANTING THE PETITION

### I. THE DECISION BELOW CONFLICTS WITH THIS COURT'S REPEATED INSTRUCTION THAT ARTICLE III STANDING MUST REMAIN DISTINCT FROM STATUTORY ENTITLEMENT TO SUE

This Court has instructed lower courts to distinguish constitutional limitations on the judicial power from statutory limitations on the causes of action Congress has created. *See Lexmark*, 572 U.S. at 125–28 & n.4. Article III standing asks whether a plaintiff has suffered a concrete injury, fairly traceable to the defendant's conduct, that a favorable decision is likely to redress. Federal statutes ask a different question: whether Congress has authorized this particular plaintiff to invoke a particular cause of action. Although both

inquiries bear on whether litigation may proceed, they arise from different sources of law and carry distinct procedural consequences.

The Federal Circuit's opinion erases that distinction. The panel determined that AIT lacked Article III standing from the outset on the basis that it held no exclusionary patent rights when it filed suit. App. 8a. In doing so, the panel converted a determination about statutory entitlement to sue into a constitutional limitation on the judicial power itself. That conclusion cannot be reconciled with this Court's modern Article III jurisprudence, which binds the courts of appeals in patent cases as in any other. *See, e.g.*, *Hutto v. Davis*, 454 U.S. 370, 375 (1982) (per curiam) ("a precedent of this Court must be followed by the lower federal courts").

The distinction is not merely formal. As this Court has explained, "[j]urisdiction … is a word of many, too many, meanings." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 510 (2006) (quoting *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 90 (1998)). Treating statutory limitations as jurisdictional alters the operation of numerous procedural doctrines. Jurisdictional defects cannot be waived or forfeited and may be raised at any stage of the litigation, even after trial and entry of judgment. *Id.* at 506, 514. Indeed, when a court concludes that it lacks subject matter jurisdiction, "the court must dismiss the complaint in its entirety," even claims "fully tried by a jury and determined on the merits." *Id.* at 514.

Recognizing those dangers, this Court has developed a consistent body of precedent separating statutory limitations on a cause of action from limits on the courts' power. In *Arbaugh*, the Court held that

statutory limitations should not be treated as jurisdictional absent a clear statement from Congress. 546 U.S. at 516. In *Reed Elsevier, Inc. v. Muchnick*, the Court rejected the argument that a statutory prerequisite to suit deprived federal courts of subject-matter jurisdiction. 559 U.S. 154, 166, 169 (2010). And in *Lexmark*, the Court applied that principle to standing, distinguishing Article III standing and statutory cause-of-action requirements and holding that whether a plaintiff falls within the class of persons Congress authorized to sue presents a question of statutory interpretation, not of Article III standing. 572 U.S. at 128 & n.4.

*Lexmark* is particularly significant because it rejected the reasoning on which the Federal Circuit's decision rests: treating a statutory limit on who may sue as a limit on the courts' power to hear the case at all. Before *Lexmark*, courts often described such limits as questions of "prudential standing." 572 U.S. at 125–26. This Court called that label "misleading," *id.* at 125, and observed that even the term "statutory standing," though "an improvement over the language of 'prudential standing,'" is "misleading, since 'the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.*, the court's statutory or constitutional *power* to adjudicate the case.'" *Id.* at 128 n.4 (quoting *Verizon Md. Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 642–43 (2002) (emphasis in original)). Whether a plaintiff may invoke a congressionally created cause of action turns on the meaning and reach of the statute Congress enacted, not on the constitutional power of the federal courts to hear the case. *Id.*

The Federal Circuit recognized as much in *Lone Star Silicon Innovations LLC v. Nanya Technology Corp.*, 925 F.3d 1225, 1234–36 (Fed. Cir. 2019). Applying *Lexmark*, the court concluded that the requirement in 35 U.S.C. § 281 that an infringement action be brought by a "patentee" does not present a question of Article III standing but instead concerns a plaintiff's statutory entitlement to sue. *Id.* at 1235 ("*Lexmark* is irreconcilable with our earlier authority treating § 281 as a jurisdictional requirement."). *Lone Star* correctly understood that *Lexmark* requires courts to distinguish constitutional standing from statutory authorization. The decision below departs from that understanding by treating a plaintiff's inability to satisfy the statutory requirements for maintaining a patent infringement action as dispositive of Article III jurisdiction.

The point was confirmed in subsequent decisions. In *Schwendimann v. Arkwright Advanced Coating, Inc.*, the Federal Circuit held that "[a]s long as a plaintiff alleges facts that support an arguable case or controversy under the Patent Act, the court has both the statutory and constitutional authority to adjudicate the matter." 959 F.3d 1065, 1071 (Fed. Cir. 2020). Because the plaintiff there alleged she was "the owner by assignment" of the patent and that the defendant infringed it, the court found "no 'standing' issue to be decided in this appeal," *id.*, even though the written instrument memorializing that allegation was later found defective and required reformation to accurately reflect an assignment the parties had agreed to before suit was filed. *Id.* at 1073–75. In other words, *Schwendimann* treated the defect in the written assignment as a statutory problem with the instrument, not as a constitutional defect in the court's power. AIT

made the same kind of allegations below, alleging ownership by assignment of the Asserted Patents, 2013 Compl. ¶¶ 8–9, 11, through a recorded 2012 assignment from ASI. C.A. App. 4562–4566. Yet the panel never mentioned, let alone grappled with *Schwendimann*, despite AIT's reliance on that precedent. Pet. C.A. Br. 55–57; Pet. C.A. Reply Br. 25–26.

Subsequently, in *Intellectual Tech LLC v. Zebra Technologies Corp.*, the Federal Circuit again invoked *Lexmark* in holding that "Article III standing is a jurisdictional requirement, which is incurable if absent at the initiation of suit," whereas "[t]he issue of whether the statutory requirements of § 281 are met … is not jurisdictional and a defect is curable by joinder." 101 F.4th 807, 814 (Fed. Cir. 2024) (citations omitted).[1] The court there expressly traced the source of the confusion at issue in this petition: "[p]rior to our case law's acknowledgement of this jurisdictional and substantive distinction, many of [the Federal Circuit's] opinions had improperly melded the injury-in-fact inquiry with the § 281 inquiry—often performing a combined analysis of the two simultaneously." *Id.* The decision below repeats the exact error *Intellectual Tech* identified and warned against.

---

[1] This Court denied certiorari in *Zebra Technologies Corp. v. Intellectual Tech LLC*, No. 24-114, 145 S. Ct. 568 (2024). The question presented there was whether a party has Article III standing to sue an accused infringer who can obtain a license from a third party. Pet. i, *Zebra*, No. 24-114 (U.S. July 30, 2024). It did not ask whether the exclusionary-rights requirement is itself a necessary component of Article III standing, or whether Rule 17 may cure its absence.

AIT alleged below the kind of concrete economic injury Article III recognizes. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) (identifying "monetary harms" among the "traditional tangible harms" that "readily qualify as concrete injuries under Article III"). AIT alleged that it held the exclusive right to practice the Asserted Patents and to sue and recover damages for their infringement; that Salesforce made, used, sold, and offered for sale products that infringed those patents; and it sought monetary damages adequate to compensate it for Salesforce's infringement. 2013 Compl. ¶¶ 11, 15–26 & Prayer ¶ B. Those allegations readily satisfy the familiar constitutional requirements of injury in fact, traceability, and redressability. Yet the panel never engaged that inquiry. It held that Article III standing was absent not because AIT failed to allege a concrete injury, but because AIT lacked the ownership interest necessary to demonstrate "exclusionary patent rights." App. 8a. Thus, the panel treated the answer to a statutory-entitlement question as dispositive of constitutional standing, and collapsed the two inquiries *Lexmark* held are distinct. Under this Court's precedents, the consequence should have been, at most, that AIT failed to satisfy a statutory prerequisite governing who may maintain the federal cause of action Congress created. The Federal Circuit instead held that AIT never possessed Article III standing at all.

Salesforce's response to AIT's petition for rehearing *en banc* did not dispute that *Lexmark*, *Intellectual Tech*, and *Lone Star* separate Article III standing from statutory entitlement to sue. C.A. Reh'g Resp. at 9–11. Rather, it argued that AIT was a "*complete stranger* to the patents it sues under," *id.* at 2

(emphasis in original), and that its asserted defect was therefore not a marginal insufficiency of exclusionary rights of the kind at issue in *Intellectual Tech* and *Lone Star*, but a complete absence of any rights whatsoever. *Id.* at 10. However, that framing sidesteps the question presented. Characterizing AIT's defect as complete rather than marginal says nothing about why a deficiency in exclusionary rights—of any degree—should be treated as a constitutional problem rather than a statutory one.

Further, Salesforce's characterization of AIT as a "complete stranger" to the patents, which the panel did not use, is undermined by the record. As Salesforce itself has acknowledged, the same two individuals owned and controlled both AIT and ASI (i.e., the entity that executed the assignment of the Asserted Patents to AIT). C.A. Reh'g Resp. at 1. Indeed, Nelson and Sturgeon agreed that the patents would be assigned to AIT so that it could pursue litigation against Salesforce, and the 2012 assignment to AIT was made with her approval. Nelson Decl. ¶¶ 14–17, 20–23, C.A. App. 4624–4626. This is not a case in which an entity with no connection to a patent sought to claim harm based on a stranger's intellectual property. Whatever the legal effect of the instrument used to carry out the transfer of patent rights between those commonly owned companies, AIT, as the assignee of record, plausibly alleged that it bore the economic consequences of Salesforce's alleged infringement. 2013 Compl. ¶¶ 11, 15–26 & Prayer ¶ B. That is precisely the kind of injury in fact this Court requires, and it bears no resemblance to the parade of hypothetical strangers Salesforce invoked below to suggest that "*anyone* could claim

Article III standing to sue on *any* patent on Day One." C.A. Reh'g Resp. at 10 (emphasis in original).

The Federal Circuit's holding that AIT never possessed Article III standing cannot be justified by treating patent cases as uniquely exempt from this Court's jurisprudence. Nothing in Article III suggests that patent plaintiffs must satisfy a different constitutional standing test than plaintiffs asserting any other federal cause of action. *See, e.g., Lexmark*, 572 U.S. at 125 (applying the ordinary Article III framework to a Lanham Act claim and finding injury in fact based on lost sales and reputational harm); *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 273–74, 285–87 (2008) (applying the same framework to an assigned claim under the Communications Act and holding that an assignee may sue to redress the injury in fact suffered by its assignor); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 183–85 (2000) (applying the same framework to a Clean Water Act citizen suit and finding injury in fact based on diminished recreational and aesthetic use). This Court's decisions have articulated a uniform distinction between constitutional standing and statutory entitlement to sue. The decision below creates a patent-specific exception to that general rule without identifying any constitutional basis for doing so.

## II. THE DECISION BELOW CREATES A PATENT-SPECIFIC CONSTITUTIONAL STANDING RULE UNKNOWN TO THIS COURT'S ARTICLE III JURISPRUDENCE

The court of appeals' constitutional error was not an isolated incident. The Federal Circuit has adopted a

patent-specific constitutional rule unlike anything found in this Court's Article III decisions. Specifically, Federal Circuit precedent requires the presence of an "exclusionary right" for jurisdiction: "the touchstone of constitutional standing in a patent infringement suit is whether a party can establish that it has an exclusionary right in a patent that, if violated by another, would cause the party holding the exclusionary right to suffer legal injury." *WiAV*, 631 F.3d at 1265; *see also Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1551–54 (Fed. Cir. 1995) (*en banc*) (independent sales organizations that did not have "the right to exclude others" lacked standing). Under that rule, a plaintiff that lacks an exclusionary interest necessarily lacks Article III standing, regardless of the concrete economic injury it alleges.

That is not the constitutional inquiry this Court has prescribed. Article III asks whether the plaintiff has suffered a concrete injury fairly traceable to the defendant's conduct and capable of judicial redress. *Lujan*, 504 U.S. at 560–61; *accord Spokeo*, 578 U.S. at 338–339; *Lexmark*, 572 U.S. at 125. It does not demand that a plaintiff hold a specific property interest in the subject matter of a dispute as an additional element of standing. *See supra* Section I. Whether the plaintiff possesses the legal interest necessary to invoke a particular federal cause of action under the Patent Act is a different question. As *Lexmark* explains, that inquiry concerns the scope of the statutory cause of action Congress created, not the constitutional authority of the federal courts to adjudicate a dispute. 572 U.S. at 127–128 & n.4. Indeed, *Lexmark* drew this very distinction for another element of the cause of action at issue there: "Proximate causation is not a requirement of Article III

standing, which requires only that the plaintiff's injury be fairly traceable to the defendant's conduct … it is an element of the cause of action under the statute." *Id.* at 134 n.6. The same logic applies with equal force to whether a plaintiff holds an exclusionary interest under § 281 of the Patent Act, which the Federal Circuit has erroneously treated as constitutional.

A suit on an expired patent illustrates the point. As this Court has recognized, "when the patent expires, the patentee's prerogatives expire too." *Kimble v. Marvel Entertainment, LLC*, 576 U.S. 446, 451 (2015). Yet the patentee may still sue for infringement committed during the patent's term: § 286 reflects "a judgment by Congress that a patentee may recover damages for any infringement committed within six years of the filing of the claim." *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 580 U.S. 328, 336 (2017); *see* 35 U.S.C. § 286; *see also Genetics Inst., LLC v. Novartis Vaccines and Diagnostics, Inc.*, 655 F.3d 1291, 1299 (Fed. Cir. 2011) (recognizing that "an expired patent may form the basis of an action for past damages subject to the six-year limitation under 35 U.S.C. § 286"). Were the absence of an exclusionary right at the inception of suit an Article III defect, every such action would lie beyond the judicial power. As with proximate causation in *Lexmark*, whatever role exclusionary rights play in determining who may sue as the "patentee" does not present an Article III standing question. 572 U.S. at 134 n.6.

The decision below treats an exclusionary right at the inception of suit as a constitutional requirement. The panel did not hold that AIT failed to allege a concrete injury, or that Salesforce's alleged infringement caused no economic harm to AIT. Instead, it proceeded directly

from its conclusion that AIT lacked an exclusionary interest to the conclusion that Article III standing was absent. App. 8a (AIT "had no exclusionary patent rights at the inception of the lawsuit and lacked constitutional standing to sue under them"). Once the statutory ownership question was answered, the constitutional inquiry ended.

To be sure, exclusionary interests are relevant to determining who is entitled to maintain a patent infringement action under the Patent Act. They may define the substantive rights Congress has chosen to protect, bear on ownership, or determine whether a plaintiff can maintain and ultimately prevail on the claim. AIT does not dispute that courts must resolve those questions where challenged. The error lies in treating the answer to those statutory questions as dispositive of Article III jurisdiction. As explained above, *see supra* Section I, the Federal Circuit has recognized this precise distinction in *Lone Star*. Yet the decision below departs from that understanding by making the statutory ownership determination dispositive of constitutional standing. Nothing in Article III justifies treating patent plaintiffs differently, but that is the practical consequence of the panel's decision: patent plaintiffs must establish not merely a concrete injury, but also a particular form of substantive property interest before Article III jurisdiction may exist.

Nor is such a rule necessary to preserve the limitations Congress enacted. Courts remain free to determine whether a plaintiff satisfies the Patent Act's requirements for maintaining an infringement action. Treating those requirements as statutory rather than constitutional does not enlarge the class of plaintiffs entitled to recover. It simply respects the distinction this

Court has drawn between constitutional standing and statutory entitlement to sue. A plaintiff may fail to satisfy the Patent Act's statutory requirements without thereby losing Article III standing.

Accordingly, the decision below warrants this Court's review. It does more than misapply this Court's standing precedents. By treating the question of who may invoke a federal cause of action as a limit on the courts' power to hear the case, it adopts a constitutional rule that cannot be reconciled with *Lexmark*'s insistence that constitutional standing and statutory entitlement remain distinct inquiries. *See supra* Section I.

## III. THE DECISION BELOW PRESENTS A QUESTION THE FEDERAL CIRCUIT HAS LONG AVOIDED

This Court ordinarily benefits from allowing important legal questions to percolate in the lower courts before intervening. That process has now run its course. In recent years, litigants have repeatedly urged the Federal Circuit to reconcile its patent-standing jurisprudence with this Court's decisions distinguishing Article III standing from statutory entitlement to sue. That repeated presentation by sophisticated litigants evidences the issue's doctrinal importance. Yet the Federal Circuit has consistently avoided resolving the issue. The following examples illustrate the pattern.

In *Omni MedSci, Inc. v. Apple Inc.*, the Federal Circuit treated the plaintiff's standing to assert its patents as "turn[ing] on whether it has an exclusionary right in the asserted patents." 7 F.4th 1148, 1151 (Fed. Cir. 2021). Yet the parties disputed whether that inquiry went to Article III standing at all, or instead to statutory entitlement to sue, and the Federal Circuit expressly

declined to decide the point because it resolved the appeal on patent ownership grounds. *Id.* at 1151 n.2 (noting dispute over "whether instead of filing a Rule 12(b)(1) motion, Apple should have filed a Rule 12(b)(6) motion to dismiss because Apple was asserting only that Omni lacked statutory, not constitutional, standing," and citing *Lone Star*, 925 F.3d at 1235–36 and n.6).

*In re Cirba Inc.* also illustrates the Federal Circuit's persistent reluctance to resolve the question definitively. No. 2021-154, 2021 WL 4302979 (Fed. Cir. Sept. 22, 2021). Cirba Inc. ("Cirba") sought mandamus after a district court set aside, for lack of standing, a jury verdict of over $236 million following trial. Among other things, Cirba argued that the district court had erred by holding "that exclusionary rights are necessary for Article III standing," and that *Lexmark* and *Lone Star* required the court to change its precedent. 2021 WL 4302979, at *2–3. The Federal Circuit denied the petition but did not endorse the district court's constitutional holding. It acknowledged that its "precedent treating 35 U.S.C. § 281 as a jurisdictional requirement was irreconcilable with *Lexmark*," and that *Lexmark* and *Lone Star* "warn against conflating statutory requirements with jurisdictional/standing requirements." *Id.* at *3. But the court found it "not clear" that those cases required altering its exclusionary-rights precedent, concluding that they, and *Schwendimann*, did not answer the Article III question Cirba raised. *Id.* It was also "not firmly convinced" that Cirba had shown a "clear and indisputable right" to the writ based on the district court's Article III holding. *Id.* The constitutional question Cirba raised went unanswered, not rejected.

Cirba subsequently raised the same argument in an interlocutory appeal from the denial of a preliminary injunction, arguing that "[t]his Court's old understanding of the § 281 requirements as jurisdictional is no longer viable," and that *Schwendimann*'s majority had "explicitly rejected" a dissent's contrary view "that Article III still requires exclusionary rights." Br. of Pl.-Appellant at 25, 28, *Cirba Inc. v. VMware, Inc.*, No. 2023-1770 (Fed. Cir. Oct. 27, 2023), ECF No. 17. However, the Federal Circuit did not resolve that argument before the appeal was dismissed by agreement of the parties. *Cirba*, No. 2023-1770 (Fed. Cir. July 24, 2024), ECF No. 55 (dismissing appeal under Fed. R. App. P. 42(b)).

The same litigant pressed the same argument as amicus in an unrelated case. In *Uniloc USA, Inc. v. Motorola Mobility LLC*, Cirba submitted an amicus brief urging the Federal Circuit to clarify that exclusionary rights are not required for Article III standing in patent infringement cases, and cataloged the split among district courts on the question. Corrected Br. of Cirba Inc. as Amicus Curiae at 3, 21–23, *Uniloc USA, Inc. v. Motorola Mobility LLC*, No. 2021-1555 (Fed. Cir. July 16, 2021), ECF No. 30. However, the Federal Circuit's merits decision did not reach that question either. Instead, it affirmed the district court's no-standing judgment on collateral-estoppel grounds, because the appellant had lost the same standing issue in a separate case and then voluntarily dismissed its appeal from that adverse judgment. *Uniloc USA, Inc. v. Motorola Mobility LLC*, 52 F.4th 1340, 1345–50 (Fed. Cir. 2022). Once again, a litigant presented the Federal Circuit with the very question this petition raises, and

once again the Federal Circuit found a way to avoid deciding it.

Most recently, in *A.L.M. Holding Co. v. Zydex Industries Private Ltd.*, the Federal Circuit was again confronted with the exclusionary-rights question before reversing a district court that had found no standing where the patent owner retained a right to sue, a sublicensing veto, and royalty interests. 176 F.4th 1326, 1334–36 (Fed. Cir. 2026). There, the appellant expressly argued that the district court's approach "depart[ed] from Supreme Court and other precedent making clear that Article III standing is a 'low threshold' that requires only monetary harm." Principal Br. of Appellants at 43–44, *A.L.M. Holding Co. v. Zydex Indus. Private Ltd.*, No. 2025-1317 (Fed. Cir. Feb. 24, 2025), ECF No. 8. Specifically, the appellant argued that it had "Article III standing for the simple reason that [it had] suffered the quintessential injury in fact: monetary harm," *id.* at 25, which is "enough, regardless of exclusionary rights." *Id.* at 10–11. The Federal Circuit expressly declined to resolve that argument, stating in a footnote: "Because we conclude that Plaintiff retains an exclusionary right sufficient for constitutional standing, we need not reach this issue." *A.L.M. Holding*, 176 F.4th at 1334 n.4. Thus, the Federal Circuit acknowledged the constitutional argument now presented here, yet declined to decide it because the appeal could be resolved on narrower grounds. The exclusionary rights issue therefore remained without definitive resolution.

The decision below is different. Unlike the earlier cases, this case did not permit the Federal Circuit to avoid the constitutional question. Having concluded that AIT lacked the exclusionary interest the court deemed necessary under its ownership jurisprudence, the court

went on to hold that AIT lacked Article III standing. The constitutional question that had been repeatedly presented and deferred could no longer be avoided. The Federal Circuit answered it by squarely holding that the absence of an exclusionary interest defeats Article III jurisdiction. App. 8a.

That constitutional holding was not left untested below. AIT sought panel rehearing and rehearing *en banc*, arguing that the panel had impermissibly conflated Article III standing with statutory entitlement to sue, in conflict with this Court's decisions in *Lexmark* and related cases. The Federal Circuit did not summarily deny the petition. Instead, it requested a response from Salesforce, received full adversarial briefing addressing the constitutional issue, and thereafter denied rehearing, leaving the panel's constitutional analysis undisturbed. This is therefore not a case in which the issue escaped the court's attention or awaits further consideration within the Federal Circuit. The court of appeals had a full opportunity to revisit the constitutional question and declined to do so.

That progression is the kind of doctrinal development that often warrants this Court's review. The issue has not emerged suddenly. It has developed through years of litigation and multiple opportunities for the Federal Circuit to reconsider the relationship between its patent-standing jurisprudence and this Court's Article III decisions. The Federal Circuit has passed up each one, and there is little reason to believe that further development will produce greater clarity. This Court's intervention is therefore timely.

## IV. THE DECISION BELOW DISRUPTS THE ORDINARY OPERATION OF THE FEDERAL RULES BY CONSTITUTIONALIZING A STATUTORY OWNERSHIP QUESTION

The distinction between constitutional standing and statutory entitlement to sue is not merely academic. It determines whether the Federal Rules of Civil Procedure operate as written. If a plaintiff lacks statutory authority to sue, the Rules let a court correct that defect and allow litigation to proceed on the merits. But if the same defect is labeled a constitutional deficiency instead, those corrective mechanisms may no longer be available. The decision below therefore alters the operation of the Federal Rules by transforming what should be statutory questions concerning the proper plaintiff into constitutional barriers to federal jurisdiction.

Here, after the district court dismissed the complaint, AIT maintained that the defect in the chain of title alleged by Salesforce could be addressed through established procedural and equitable mechanisms. It sought reconsideration, arguing that the written instruments should be reformed to reflect the parties' original intent. Mot. for Recons. at 8–10, C.A. App. 4957–4959. AIT likewise invoked Federal Rule of Civil Procedure 17, which expressly provides that an action should not be dismissed for failure to prosecute in the name of the real party in interest until a reasonable opportunity has been afforded for ratification, joinder, or substitution of the proper party, and argued that any defect concerning the identity of the proper plaintiff had been cured. *Id.* at 3–8, C.A. App. 4952–4957. However, because the Federal Circuit held that the title defect

deprived AIT of Article III standing when the complaint was filed, it concluded that neither Rule 17(a)(3) ratification nor reformation could cure the defect. App. 12a–14a.

That result cannot be reconciled with the structure and purpose of Rule 17. Rule 17(a)(3)'s ratification and substitution mechanism was "added simply in the interests of justice." Fed. R. Civ. P. 17, Advisory Committee Notes to the 1966 Amendments. It ensures litigation is not forfeited over an honest mistake in the named plaintiff's identity, so long as the defendant's legitimate interest in avoiding duplicative liability remains protected. Accordingly, the Rule directs courts to permit ratification, joinder, or substitution of the real party in interest, after which "the action proceeds as if it had been originally commenced by the real party in interest." Fed. R. Civ. P. 17(a)(3). The Rule presupposes that disputes regarding the identity of the proper plaintiff present procedural or statutory questions, not constitutional defects depriving the court of judicial power from the moment suit was filed.

Indeed, the Federal Circuit has demonstrated that ownership defects existing at filing can be corrected through such mechanisms without offending Article III. As discussed in Section I above, in *Schwendimann*, the plaintiff's complaint alleged ownership by assignment, but the written instrument documenting that assignment was later found deficient and required reformation under state contract law. 959 F.3d at 1068–70, 1073–75. Applying *Lexmark* and *Lone Star*, the Federal Circuit held that those allegations presented an arguable case or controversy sufficient for constitutional standing, leaving only statutory questions about whether

the plaintiff qualified as a "patentee" under § 281 and whether the assignment was reflected in a written instrument under § 261. *Id.* at 1071–72. The later correction of the underlying writing was treated as a state-law reformation issue, and not as an Article III problem. *Id.* at 1073–75. That is the kind of corrective process Rule 17(a)(3) and equitable reformation are designed to permit, and what the decision below forecloses. Whereas the plaintiff in *Schwendimann* was permitted to reform a defective instrument and proceed to judgment, AIT here was denied similar relief, on the theory that the underlying defect was constitutional rather than statutory. The decision below thus does not merely risk disrupting these procedural mechanisms in the abstract; it has already prevented one litigant from using a corrective process the Federal Circuit itself approved in a comparable posture just a few years earlier.

The Federal Circuit has offered no coherent account of where the constitutional inquiry ends and the statutory inquiry begins, *see supra* Sections I and III, and the district court decisions reflect the resulting uncertainty. Some district courts have permitted Rule 17 substitution or comparable corrective relief after a mistake about title left the original plaintiff with no patent rights at the inception of suit. In *CPI Card Group, Inc. v. Multi Packaging Solutions, Inc.*, the court permitted the actual patent owner to be joined under Rule 17(a)(3) after finding that the named plaintiff lacked constitutional standing because its recorded assignment conveyed no rights in view of an earlier unrecorded assignment to its subsidiary. No. 16-cv-02536-MEH, 2018 WL 3429197, at *1, *5–9 (D. Colo. July 16, 2018). Likewise, in *Park B. Smith, Inc. v. CHF*

*Indus. Inc.*, where the patents misnamed the assignee, the court allowed substitution despite finding that the plaintiff "did not have constitutional standing at the time it filed suit." 811 F. Supp. 2d 766, 771–75 (S.D.N.Y. 2011). And in *Spectrum Dynamics Medical Ltd. v. General Electric Co.*, the court substituted the real party in interest as counterclaim plaintiff under Rule 17(a)(3), although the original counterclaimant had transferred all interest in the patents. The court did so after finding "no dispute" that the original counterclaim plaintiff had no "Article III standing to assert the counterclaim." No. 18-CV-11386, 2023 WL 7135236, at *1–2, *6–7 (S.D.N.Y. Oct. 30, 2023) (magistrate judge's opinion and order). Other courts, including the district court below, have reached the opposite conclusion, treating Rule 17 as unavailable once an ownership defect is characterized as constitutional. *See Middleton, Inc. v. Minn. Mining & Mfg. Co.*, No. 4:03-CV-40493-MWB-TJS, 2012 WL 12860706, at *1 & n.1 (S.D. Iowa Mar. 6, 2012) (declining to follow *Park B. Smith* and refusing to allow substitution because, *inter alia*, "constitutional standing must exist at the time a lawsuit is filed"); App. 32a–34a.

Those decisions show the inconsistency in treatment of requests to cure ownership defects. Some courts allow equitable relief and avoid forfeiture over a mistake in naming the proper plaintiff, while others treat the mistake as implicating Article III standing and foreclosing any cure. Clarification from this Court is needed to restore the constitutional distinction on which the Federal Rules depend.

The line between Article III standing and statutory entitlement is not unique to patent law; it applies to every federal cause of action. *See supra* Section I. Left uncorrected, the Federal Circuit's

reasoning, which treats a plaintiff's failure to satisfy a statutory prerequisite to suit as a constitutional bar rather than a curable defect, supplies a template any court of appeals could use to convert other statutory requirements into Article III problems.

## V. THE DECISION BELOW PRESENTS AN IDEAL VEHICLE FOR RESOLVING THE QUESTION PRESENTED

This case presents the constitutional question in a clean procedural posture. The judgment below rests on the Federal Circuit's conclusion that AIT lacked Article III standing because it did not possess an "exclusionary" interest when the complaint was filed. The present petition takes the Federal Circuit's ownership determination as given for purposes of the question presented, so no unresolved issue of contract interpretation or substantive patent law ownership impedes review. The central question is whether the absence of the exclusionary interest identified by the Federal Circuit defeats Article III standing or instead concerns only statutory entitlement to maintain an infringement action.

The court of appeals' sole stated rationale for affirmance of the denial of equitable relief rested on the ground that "AIT has cited no cases under our precedent, nor have we found any, that indicate that a party can cure a lack of constitutional standing pursuant to Rule 17(a)(3) ratification or contract reformation." App. 13a–14a. The court of appeals did not offer any alternative ground for affirmance. In particular, it did not invoke the district court's ground that AIT's request for equitable relief "could have been raised in connection with [AIT's] opposition to the motion to dismiss," App. 31a–32a, or grapple with AIT's argument that the

timeliness ruling conflicted with Ninth Circuit authority entitling a plaintiff to await a ruling on a dispute over its real-party-in-interest status before being charged with notice under Rule 17(a)(3). Pet. C.A. Br. 41–43 (citing *Jones*, 873 F.3d at 1129 n.3). This Court therefore would need only address the constitutional ground on which the court of appeals affirmed the denial of equitable relief.

Nor does AIT's second infringement action affect this case's suitability as a vehicle. AIT filed that action after the district court's dismissal while seeking review of the constitutional ruling and in view of § 286's six-year limit on damages, not because it accepted that ruling. *See* 35 U.S.C. § 286; 2025 Compl. ¶ 3. A decision in AIT's favor would entitle AIT to seek relief in the first action based on its 2013 filing date, whereas the second action would entitle AIT to seek relief for the six-year period before its 2025 filing date, subject to equitable tolling. The second action therefore neither moots this case nor impedes this Court's review.

Finally, the ordinary justification for awaiting further development in the lower courts, *see supra* Section III, does not apply here with the same force it would in a case that could otherwise reach this Court through a conflict among the circuits. Because the Federal Circuit possesses exclusive jurisdiction over patent appeals, 28 U.S.C. § 1295(a)(1), no sister circuit will ordinarily have occasion to address the question presented, and a circuit split is unlikely to develop to signal when the issue has matured for review. The confusion documented above is unlikely to be resolved absent this Court's intervention, because the Federal Circuit has avoided resolving it in the cases discussed above and denied rehearing *en banc* here.

## CONCLUSION

For the foregoing reasons, AIT respectfully requests that the Court grant the petition for a writ of certiorari.

Respectfully submitted,

STEVEN C. SEREBOFF
Socal IP Law Group LLP
310 N. Westlake Blvd., Suite 120
Westlake Village, California 91362
805-230-1356

CHARLES WIZENFELD
*Counsel of Record*
MICHAEL S. DEVINCENZO
ANDREA PACELLI
Hecht Partners LLP
125 Park Avenue, 25th Floor
New York, NY 10017
212-851-6821
cwizenfeld@hechtpartners.com

*Counsel for Petitioner*

November 9, 2026